660 So.2d 1285 (1995)
Chester Lee GOSSETT, Jr., and Eric Owayne May
v.
STATE of Mississippi.
No. 92-KA-00413-SCT.
Supreme Court of Mississippi.
August 17, 1995.
Rehearing Denied September 28, 1995.
*1287 Johnnie E. Walls, Jr., Walls Law Firm, Greenville, John H. Daniels, III, Dyer Dyer Jones & Daniels, Greenville, Ray Charles Carter, Clarksdale, for appellant.
Michael C. Moore, Attorney General, Jackson, Jean Smith Vaughan, Sp. Ass't Attorney General, Jackson, for appellee.
Before HAWKINS, C.J., SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
Eric Owayne May and Chester Lee Gossett were indicted on June 17, 1991 for the *1288 murder of Nathaniel Hunter in violation of Miss. Code Ann. § 97-3-19. The trial court denied motions from each defendant for the severance of their causes, and they were tried simultaneously on February 24, 1992 in the Washington County Circuit Court. Both were found guilty on the charge of murder, and the court sentenced them each to a term of life imprisonment in the custody of the Mississippi Department of Corrections. The numerous issues raised in their separate appeals are addressed in combination where possible.

FACTS
Gossett and May entered the club known as "Ford's Entertainment" in Leland, Mississippi some time around midnight on March 16, 1991. The facts leading to the shooting of Nathaniel Hunter were disputed, but witnesses observed both defendants shoot Nathaniel Hunter on the dance floor of the club. The club was apparently filled with people, loud music, colored disco lights, simulated fog, and flashing strobe lights during the incident. One witness who was picking up his wife from the club when the shooting began claimed that visibility in the club was such that he brought a flashlight into the club.
Cacious Walker testified that May and Gossett both shot Hunter on the dance floor at Ford's Entertainment on the morning of March 16, 1991. Walker had been acquainted with the victim and the defendants since high-school, and he knew Gossett by the nickname "Rico." Walker identified at trial a silver .380 as being similar to the weapon that Gossett used to shoot Hunter, and a dark colored .44 magnum as being similar to the weapon used by May in the incident. Walker testified that Hunter did nothing to provoke a confrontation, but that both of the defendants nevertheless fired their weapons at Hunter from a distance of about two feet away. He heard at least three shots fired during the incident.
Carlos Smith explained that he was sitting at one of the booths near the front door of the club on March 16, 1991 when he saw the two defendants enter the front door and walk towards the back of the building. Smith testified that he walked to the back of the club to converse with Hunter where he observed May initiate a confrontation by striking Hunter in the face with a pistol without any provocation. Smith said that the scuffle quickly ended when Gossett fired a chrome pistol at Hunter. He testified that May then shot Hunter with a larger black gun, and that before the defendants exited the club, May kicked Hunter who was lying wounded on the ground. Smith identified at trial the chrome.380 and the black .44 magnum recovered by the State as similar to those carried by the defendants.
Anthony Evans corroborated the claim that May and the victim were in a brawl before the defendants each fired their weapons at the victim. Evans, however, had no knowledge of the events leading to the initial scuffle or whether May was holding a gun while struggling with the victim. He also identified the chrome.380 and the black .44 magnum introduced at trial.
Samuel Lee Ratcliff, Jr. testified that he was at the back of the building where he noticed Hunter and May staring at one another. He testified that he looked away for a moment, but that he turned back around as Hunter was throwing a punch at May during a struggle. Like Evans, Ratcliff could not positively determine who was responsible for initiating the brawl. Ratcliff was unsure of the origin of the first shot which rang out, but he was positive that May was responsible for the second. He said that May took a step backwards before aiming the pistol and shooting Hunter. He was unaware of Gossett's presence during the entire confrontation.
Willie Jones testified for the defense that May fell to the floor after being hit over the head with a bottle. He heard two consecutive shots that sounded similar, then one loud blast that sounded different. He estimated that May was approximately fifty feet from his table, and that Hunter, who was only a few feet away, fell onto a table after being shot. Jones was not sure who hit May with the bottle, and he did not notice Gossett anywhere near May when the shots were fired. Robert Johnson testified that May *1289 had a bleeding gash in the back of his head at approximately 1:15 a.m.
Tommie Rodgers noticed a gun lying on the floor after the shooting. Rodgers exited the club with the gun wrapped in a black jacket after another patron standing nearby denied ownership. He sold the gun to Frederick Jackson the following day at the "Side Effect" for $110.00 and split the money with Paul Banks who had accompanied him to the store. Frederick Jackson corroborated this testimony explaining that he paid $110.00 to Paul Banks and an individual named "Tommie" for a .44 magnum and several .44 magnum cartridges. Jackson surrendered the gun to the Leland Police Department after they identified it through information received from Rodgers.
Milton Gaston of the Washington County Sheriff's Department helped secure the crime scene and take pictures for evidence. Johnny Earl Smith, the Washington County Medical Examiner, discovered a bullet wound in the left center of the victim's chest with an exit wound in the left side of his back. Smith testified that the wound appeared to be the result of a large caliber weapon. He removed a piece of lead from an area near the surface of the exit wound. He also identified at trial a T.L. Weston High class ring bearing the inscription "Rico" which he discovered lying underneath the victim.
An autopsy report prepared by Dr. Clausen indicated that the victim had two entrance wounds and two exit wounds. The report concluded that the entrance wound on the left center of the chest had been caused by a large caliber weapon, while the other wound on the right side of the body had been caused by a small to medium caliber weapon.
Dempsey Hollis of the Leland Police Department was the first officer to arrive at the crime scene on March 16, 1991 at approximately 12:34 a.m. Several people were attempting CPR on the victim when he arrived, and he estimated that there were 150 people in the area immediately after the shooting. They eventually located a witness who subsequently gave a statement at the police station implicating Gossett and May in the murder of Hunter.
Officer Hollis testified that Carlos Smith accompanied the police to each of the defendants' parents' homes after arrest warrants were obtained. May's father advised the officers that the suspects were at the Alamatt Motel on Highway 82 in Greenville. They traveled to the motel where the night manager identified the defendants from photos provided by the defendants' parents. Both defendants were apprehended at the motel, and a search of the room revealed a chrome plated .380 automatic wrapped in toilet paper laying underneath the bed. May had a small cut on the rear upper portion of his head.
Officer Williams of the Leland Police was dispatched to Ford's at 6:00 a.m. on March 16, 1991 where he met Patrick Ford. Mr. Ford turned over a copper-coated bullet he discovered on the floor near the bar while sweeping.
Steve Byrd, a forensic scientist with the Mississippi Crime Laboratory, testified that the projectiles recovered from the victim's body and from the crime scene were fired from the same.380 and .44 magnum recovered by the police.

I. WHETHER THE CIRCUIT COURT ERRED AS A MATTER OF LAW BY FAILING TO GRANT THE APPELLANTS' MOTIONS FOR THE SEVERANCE OF THEIR CAUSES?
A trial judge exercises discretion in refusing or granting a severance in all criminal trials except for cases involving the death penalty. Miss.Unif.Crim.R.Cir.Ct.Prac. 4.04; Tillman v. State, 606 So.2d 1103, 1106 (Miss. 1992); Rigby v. State, 485 So.2d 1060, 1061 (Miss. 1986); Cardwell v. State, 461 So.2d 754, 758 (Miss. 1984). The trial court abuses its discretion in not granting a severance if the defense of one codefendant tends to exculpate himself at the expense of the other codefendant, or the balance of the evidence tilts more towards the guilt of one codefendant than to the other. Duckworth v. State, 477 So.2d 935, 937 (Miss. 1985).
Gossett argues that the evidence produced in favor of his defense showed that he either stumbled and fired the shots at Hunter *1290 accidentally, or that he shot the victim in the defense of May during May's initial struggle with the victim. Gossett contends that the evidence of May's guilt created the supposition of guilt by association.
Contrary to Gossett's argument, his actual defense employed at trial failed to produce any evidence of an accidental shooting or in support of the inference that he shot Hunter "in the defense of May." Gossett's entire defense was based upon the witnesses' inability to perceive the events which transpired on the morning of March 16, 1991. Gossett introduced the disc jockey from Ford's Entertainment who explained that the room was equipped with strobe lights, fog machines, and loud music making it difficult for anyone to perceive the events which transpired that evening. Another victim to the shooting who was wounded in the hand testified that he used a flashlight to locate his wife in the bar that evening. This was his entire line of defense  one based upon mistaken identity. Although he claims in his brief that these other defenses existed, this Court must rely on the record before it and not on the assertions in the brief "however sincere counsel may be in those assertions." Phillips v. State, 421 So.2d 476, 478 (Miss. 1982). Based upon the evidence within the record before this Court, May's defense was not prejudicial to Gossett's case nor did their separate defenses tend to exculpate one while inculpating the other. Gossett's defense required the jury to believe that Gossett either was, or was not, one of the two men responsible for shooting Hunter, and May's guilt or innocence neither altered nor was affected by Gossett's contentions at trial.
May makes essentially the same arguments in support of his claim that the failure to grant a severance denied him of his constitutional right to a fair trial. His argument is also without merit. May introduced one witness on his behalf who testified that he heard a bottle break over May's head, but that he could not see the individuals responsible for the three gunshots which resulted in Hunter's death. Gossett's defense simply had no significance to the guilt or innocence of May, especially in light of the State's evidence. The balance of the evidence demonstrated that both defendants separately shot Hunter implicating them equally in the murder. Accordingly, the trial court did not abuse its discretion in denying either of the codefendants' requests for a severance.

II. WHETHER THE CIRCUIT COURT ERRED IN ITS DENIAL OF APPELLANTS' MOTIONS FOR A MISTRIAL AS A MATTER OF FACT AND A MATTER OF LAW?
Appellants complain that two separate aspects of the trial caused irreparable injury to their defense entitling them to a mistrial. The first incident involved testimony allegedly revealing prior bad conduct by the appellants. This information was elicited from the prosecution witness, Carlos Smith, in the following exchange:
Q. I hand you what's been marked state's identification 2 and ask you if that's similar to the weapon.
A. Yes, ma'am.
Q. I also hand you what's been marked state's identification 1. Is that similar to the weapon that you saw the defendant Gossett with?
A. Yes, ma'am.
Q. Based on what you observed at the club, what had [Hunter] done to either of the defendants?
A. Well, I just know of  I know a week later  [Hunter] got a friend, Al Gerone  they had shot at him. That's all.
Appellants contend that the testimony revealed prior criminal activity involving a shooting so similar to the crimes for which they were being charged that its mention denied them a fair trial. They argue that the subsequent admonition by the judge to disregard Smith's unsubstantiated comments was insufficient to cure the harm.
The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case. Miss.Unif. Crim.R.Cir.Ct.Prac. 5.15. The trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect. Roundtree v. State, *1291 568 So.2d 1173, 1178 (Miss. 1990). When the trial judge determines that the error does not reach the level of prejudice warranting a mistrial, the judge should admonish the jury to disregard the impropriety in order to cure its prejudicial effect. Perkins v. State, 600 So.2d 938, 941 (Miss. 1992); Estes v. State, 533 So.2d 437, 439 (Miss. 1988).
Evidence of past crimes not resulting in a conviction is generally not admissible. Sanders v. State, 586 So.2d 792, 797 (Miss. 1991); Lightsey v. State, 493 So.2d 375, 379 (Miss. 1986). The trial judge in the case at hand properly responded to Smith's inadmissible testimony and appropriately instructed the jury that it should disregard the testimony regarding the prior conduct of the victim. We conclude that this admonition cured any harm which may have been inflicted on the defendants' defense.
In Bullock v. State, 391 So.2d 601, 609 (Miss. 1981), this Court concluded that the exposure of similar evidence regarding prior bad conduct did not warrant a mistrial where the testimony of the witness responsible for revealing the inadmissible evidence was unresponsive to the State's question, the judge admonished the jury to ignore the testimony, and the jurors subsequently each indicated that they would disregard the testimony. A similar chain of events ensued in the case at hand. First, the witness' statement was completely unresponsive to the prosecution's question. It is difficult to make sense of the response provided by the witness as it was answered completely out of context. Secondly, the trial judge admonished the jury explaining that Smith's answer should be disregarded because it was irrelevant to the case at hand. Finally, the trial judge followed his admonition with an inquiry as to whether each individual juror could disregard the testimony regarding the prior conduct. Each individual juror responded affirmatively. We find that under these particular circumstances, the trial judge properly denied the request for a mistrial.
The defendants also claim they were entitled to a mistrial on the grounds that prosecution witness, Officer Hollis, commented on the defendants' refusal to make a statement after being arrested. The defendants' complaint stems from the following exchange:
Q. Did you transport the defendants back to the police department in Leland?
A. Yes. Officer Gregg read them their rights in my presence. All three individuals were charged. Michael Burford was charged by Officer Gregg for accessory to the crime. He read them their rights, their Miranda rights, constitutional rights. They were transported to the police department, again, read them  where their rights was read to them. They refused to give any 
Q. That's o'kay.
Defendants argue that this testimony violated their rights against self-incrimination as provided by the Fifth Amendment to the United States Constitution.
It is never proper to comment on an accused's post-Miranda silence, and normally it will be regarded by this Court as reversible error. Quick v. State, 569 So.2d 1197, 1199 (Miss. 1990). In the case at hand, however, it is arguable whether Officer Hollis' response ever indicated that the defendants refused to make any comments. The prosecutor anticipated an improper response which would have likely alluded to post-arrest silence, but the witness was effectively prevented from actually testifying to such. It is questionable from this standpoint whether any error had occurred as the witness was silenced before actually making an improper comment. If the response had clearly referred to post-Miranda silence, the error would still have been deemed harmless beyond a reasonable doubt in light of the overwhelming evidence in support of the defendants' guilt in this case. See Austin v. State, 384 So.2d 600, 601 (Miss. 1980) (concluding that district attorney's comments about defendant's silence subsequent to arrest was harmless in light of the overwhelming amount of evidence stacked against defendant).
Despite the possible effect of the witness' statement on the jury, the trial judge followed with the admonition that "no one has any obligation whatsoever to make a statement *1292 to investigating authorities and [they] have a perfect right to decline to make a statement," and also that their silence "shall not be held against them and you shall draw no inferences from that fact." The defendants claim that any ambiguity in the testimony concerning post-arrest silence was resolved, and the error intensified, when the judge followed with this admonition. While this instruction may have mistakenly drawn the jurors' attention to the fact that the defendants may have been silent upon arrest, the jury is presumed to have followed the court's instructions. Marshall v. Lonberger, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853, 74 L.Ed.2d 646 (1983). We cannot conclude, as the defendants suggest, that a proper cautionary instruction submitted to the jury by a trial judge is error in itself. For these reasons, we conclude that the trial court was well within its authority and discretion to deny the defendants' second request for a mistrial.

III. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING INTO EVIDENCE THE PHOTOGRAPHS OF THE VICTIM?
The prosecution introduced into evidence over the objection of both defendants pictures of the victim and the crime scene taken soon after the homicide. The trial judge excluded a portion of the pictures finding them to be cumulative or lacking in probative value. Appellants argue that all of the photographs of the victim introduced at trial were inflammatory and possessed no probative value.
The trial court is granted broad discretion in ruling on the admissibility of photographs. Griffin v. State, 557 So.2d 542, 549 (Miss. 1990); McNeal v. State, 551 So.2d 151, 159 (Miss. 1989). This discretion originates from the primary test for admissibility, "whether the probative value of ... [the] photographs is substantially outweighed by the danger of unfair prejudice." Parker v. State, 514 So.2d 767, 771 n. 3 (Miss. 1986) (citing M.R.E. 403). The decision of a trial judge concerning the admissibility of photographs will not be disturbed on appeal absent a showing of an abuse of discretion. Gardner v. State, 573 So.2d 716, 718 (Miss. 1990).
Photographs contain probative value when they supplement or add clarity to witness' testimony. Hughes v. State, 401 So.2d 1100, 1106 (Miss. 1981); Norman v. State, 385 So.2d 1298, 1303 (Miss. 1980). The trial judge in the present case admitted a photograph depicting a lateral view of the victim lying partly on a class ring. This photograph had evidentiary value in that it clarified the testimony of the medical examiner who explained the circumstances of finding this ring underneath the body of the victim.
Photographs also have evidentiary value if they document the cause of death and the location of the victim. Ashley v. State, 423 So.2d 1311, 1316 (Miss. 1982). A frontal shot of the victim depicting a chest wound was admitted into evidence over objection of the defendants. This photograph was relevant in showing the cause of death and the surrounding circumstances of the victim's death. The trial judge also demonstrated careful decision making before admitting this exhibit by excluding a similar photograph on the grounds that it was cumulative and depicted a greater quantity of blood surrounding the area where the victim collapsed.
The appellants cite Sudduth v. State, 562 So.2d 67, 70 (Miss. 1990), for the proposition that photographs of the victim should normally be inadmissible "where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established." The appellants' contention is plainly not supported by the facts. They each denied and contradicted the evidence which the State introduced regarding Hunter's murder. Both defendants denied involvement in the murder, as well as the circumstances of the murder.
They additionally argue that the trial judge failed to make the following inquiry set forth in McNeal v. State, 551 So.2d 151, 159 (Miss. 1989): whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury? This Court held *1293 under this test that it was an abuse of discretion to admit into evidence photos of a maggot infested skull for the purpose of proving the corpus delicti. McNeal, 551 So.2d at 159. The photographs in the case at hand assuredly did not have the same prejudicial effect as those in McNeal They were not overly gruesome, and the trial judge exercised restraint in admitting the two photographs of the murder victim which were ultimately seen by the jury. Therefore, the defendants failed to affirmatively prove any abuse of discretion by the trial judge in allowing the introduction of the photographs of the murder victim.

IV. WHETHER THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUPPORT A VERDICT OF GUILTY OF MURDER, OR IN THE ALTERNATIVE, WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Upon reviewing the legal sufficiency of the evidence, all of the evidence consistent with the defendant's guilt is accepted as true together with any reasonable inferences that may be drawn from the evidence. Heidel v. State, 587 So.2d 835, 838 (Miss. 1991); Davis v. State, 530 So.2d 694, 703 (Miss. 1988); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985). This Court may reverse only where the evidence such that reasonable and fair minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987).
If there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987).
Gossett argues that there was no evidence of "malice aforethought" to support a conviction of murder. He argues that the victim was shot spontaneously during a scuffle proving manslaughter at best. Malice aforethought is defined as the equivalent of "deliberate design."
[D]eliberate always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. `Design' means to calculate, plan, contemplate ... deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.
Windham v. State, 520 So.2d 123, 127 (Miss. 1988). Given this definition of "malice aforethought," the evidence was sufficient to show that Gossett had the requisite intent necessary for the charge of murder. In fact, the evidence indicated that before Gossett fired the first shots, it was the victim and May who were involved in the physical altercation while Gossett stood nearby. The evidence sufficiently demonstrated that Gossett had ample time to form the requisite intent for the crime of murder. While there certainly was an evidentiary basis for the crime of manslaughter, the trial court properly granted a manslaughter instruction and the jury nevertheless unanimously agreed that Gossett was guilty of murder.
We find that the evidence produced by the prosecution was sufficient to establish the remaining elements required to uphold the jury's verdict of murder against Gossett. The prosecution introduced eyewitnesses and physical evidence which directly implicated his guilt. Gossett produced evidence in his defense implying that the jury was mistaken as to the identity of the true killer. That evidence only went towards the weight to be afforded the testimony of each individual witness. The jury must be left to resolve matters regarding the weight and credibility of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993).
The evidence of May's involvement in the crime was also sufficient for the jury to find the requisite intent and the remaining elements necessary to convict him of murder. In support of his argument on appeal, May merely offers the version of the events which he alleged at trial. It was the jury's duty, however, to resolve any factual discrepancies which may have been elicited from the evidence produced at trial.
*1294 Each defendant additionally argues that the verdict was against the overwhelming weight of the evidence requiring a new trial. A new trial will be not granted by this Court unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Johnson v. State, 642 So.2d 924, 928 (Miss. 1994); McNeal v. State, 617 So.2d 999, 1009 (Miss. 1993); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). This Court must accept as true the evidence which supports the verdict, and a reversal is warranted only where the trial court abused its discretion by denying the movant a new trial. Johnson, 642 So.2d at 928. As this Court stated in Gandy v. State, 373 So.2d 1042 (Miss. 1979),
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution. Shannon v. State, 321 So.2d 1, 2 (Miss. 1975).
Gandy, 373 So.2d at 1045. We find that the overwhelming weight of the evidence summarized supra proved that the defendants were guilty of murder beyond a reasonable doubt. The jury returned a verdict consistent with this conclusion. The trial court, therefore, did not abuse its discretion in denying the defendants' request for a new trial.

V. WHETHER THE LOWER COURT COMMITTED ERROR AS A MATTER OF LAW IN FAILING TO GRANT MAY'S REQUESTED SELF-DEFENSE INSTRUCTION M-4?
The lower court denied Mars request for the following self-defense jury instruction:
INSTRUCTION D-M-4
The Court instructs the jury that the Defendant, Eric Owayne May, was entitled to act upon appearances, and if the conduct of the deceased was such as to induce in the mind of a reasonable person, situated as he was, under the circumstances then existing, and viewed from the standpoint of the Defendant, Eric Owayne May, a fear that death or great bodily harm was about to be inflicted by the deceased on him, it does not matter if there was no such danger provided that the jury believes that the Defendant, Eric Owayne May, acted in self-defense from real and honest convictions; then the jury should find the Defendant, Eric Owayne May, not guilty, even though they may believe that at the time he was mistaken and that he was not in any great danger.
The trial judge refused to grant this instruction stating that it was an incorrect statement of the law not supported by the evidence. The court instead granted the following self-defense jury instruction:
INSTRUCTION NO. S-4
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have had reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the defendant's acts.
The evidence produced at trial indicated that Gossett fired at the victim first ending the scuffle between the victim and May. May contends in his brief that he shot the victim believing that it was the victim firing shots at him. He claims that this fact required the trial court to grant his requested self-defense instruction D-M regarding a mistaken belief as to imminent danger.
*1295 The trial court did not deny a self-defense instruction altogether, but instead granted the self-defense instruction presented by the State. Where one jury instruction adequately covers the defendant's theory of self-defense, the trial court may properly refuse to grant a second instruction on the grounds that it is redundant or cumulative. Cook v. State, 467 So.2d 203, 210 (Miss. 1986); Evans v. State, 467 So.2d 957, 959 (Miss. 1984). The State's self-defense instruction S-4, like instruction D-M-4, instructed the jury that May was entitled to the defense of self-defense if he had a reasonable apprehension of imminent danger. While the State's granted instruction did not explicitly explain that May could have mistakenly believed to be in imminent danger and still have been entitled to have acted in self-defense, the instruction did make self-defense applicable in the situation where May possessed a reasonable apprehension of imminent danger and the victim had the apparent ability to inflict harm.
May argues that the granted instruction was not cumulative in that it did not properly instruct the jury to consider the circumstances existing at the time of the incident from his viewpoint as the defendant. See Windham v. State, 91 Miss. 845, 852, 45 So. 861, 862 (1908) (stating that defendant was erroneously denied instruction stating that jury should not expect from the defendant the same cool and calm judgment they would presently possess, but instead they should judge the defendant's acts by the facts and circumstances existing at the time of the incident); Johnson v. State, 42 So. 166 (Miss. 1906) (same). While instruction S-4 may not have specifically addressed this point, the instruction was nevertheless a correct statement of the law on self-defense. This Court has expressly approved the instruction submitted to the jury in the case sub judice, and additionally, we have urged prosecutors to employ this same self-defense jury instruction in the future. Robinson v. State, 434 So.2d 206, 207 (Miss. 1983); see Flowers v. State, 473 So.2d 164, 166 (Miss. 1985) (overruling Robinson to extent that it merely criticized instead of condemned instruction which it replaced). Thus, instruction S-4, as a whole, accurately guided the jury on the law of self-defense.

VI. WHETHER THE LOWER COURT ERRED AS A MATTER OF LAW AND FACT IN GRANTING THE STATE'S MURDER INSTRUCTION S-2 OVER MAY'S OBJECTION.
The State's murder instruction S-2[1] was submitted to the jury over May's objection. May does not contend that the jury instruction was an erroneous statement of the law regarding murder. He instead maintains that the evidence was not sufficient for the trial court to have submitted a murder instruction to the jury in the first place. As indicated above, we find that the evidence was sufficient to convict May of murder. Consequently, there was an evidentiary basis for the granting of the State's murder instruction S-2. This assignment of error is without merit.

VII. WHETHER THE COURT COMMITTED ERROR IN THE ADMISSION OF THE AUTOPSY REPORT PREPARED BY DR. SALLIE ANN CLAUSEN, AND IN FAILING TO REQUIRE THE PRESENCE OF DR. CLAUSEN OVER MAY'S OBJECTION.
The trial court admitted the autopsy report compiled by Dr. Clausen as a record of regularly conducted activity, otherwise known as the business records exception to the hearsay rule, pursuant to the Mississippi *1296 Rules of Evidence 803(6). May individually claims that the admission of Dr. Clausen's autopsy report through the testimony of the medical examiner, Johnny Earl Smith, denied him his Sixth Amendment right to confrontation. May argues that the autopsy report contained expert opinions making it necessary for Dr. Clausen to have personally testified and faced cross-examination at trial.
May alludes to the portion of M.R.E. 803(6) which says that business records are not admissible if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." In Kettle v. State, 641 So.2d 746, 750 (Miss. 1994), this Court reversed the trial court and held that the defendant was entitled to require that the individual responsible for conducting the laboratory tests on the content of an alleged controlled substance appear and testify in person. See Barnette v. State, 481 So.2d 788, 790 (Miss. 1985) (concluding that admission of certificate of analysis regarding controlled substance without testimony of analyst responsible for preparing such was reversible error); Spears v. State, 241 So.2d 148, 149 (Miss. 1970) (finding reversible error where lab technicians were not offered as witnesses when testimony of doctor relied on lab technician report). This Court concluded that a custodian of the Mississippi Crime Lab records may introduce laboratory reports only when the defendant does not object on the grounds that he is entitled under the Sixth Amendment to confront the person who prepared the test. Kettle, 641 So.2d at 750; see Ellis v. State, No. 91-KA-00710-SCT, slip op. at 12, 1996 WL 135644 (Miss. March 30, 1995) (distinguishing Kettle on grounds that defendant Ellis failed to make pre-trial motion or object at trial on grounds that testifying witness had not prepared laboratory tests in question); Lentz v. State, 604 So.2d 243, 249 (Miss. 1992) (holding that circuit court erred by refusing to admit lab report through testimony of lab custodian under M.R.E. 803(6) where defendant failed to make a Sixth Amendment right to confrontation objection); Gilleylen v. State, 255 So.2d 661, 663 (Miss. 1971) (holding that in order to guarantee defendant's right of confrontation, pathologist who relied on technician report to form an opinion must testify subsequent to technician who prepared report in order that State properly confronts defendant with technician witness).
Only when hearsay evidence qualifies under a "firmly rooted hearsay exception" can it be admitted over a right to confrontation objection by the defendant. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1987). An autopsy report is not considered one of these firmly rooted exceptions because they may include expert opinions and information outside of the coroner's office. Manocchio v. Moran, 919 F.2d 770, 777 (1st Cir.), cert. denied, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1990).
In the case at hand, May filed and argued a motion in limine to exclude the introduction of Dr. Clausen's autopsy report through the testimony of Johnny Earl Smith, the Washington County Medical Examiner, on the ground that his Sixth Amendment right to confrontation was being violated because Smith had not performed the autopsy himself. May renewed his objection on this same specific ground at trial. Through these procedural mechanisms, May appropriately preserved his right to confront Dr. Clausen at trial and for purposes of this appeal. May was subsequently denied his request to confront Dr. Clausen. The trial court proceeded to allow the autopsy reports into evidence through the testimony of Smith who had not personally conducted the autopsy. Thus, the trial court committed error by admitting this hearsay testimony regarding the victim's cause of death.
While it was error to admit the autopsy report without producing the author, we conclude that it was harmless. In Flowers v. State, 243 So.2d 564, 565 (Miss. 1971), this Court found error when the trial court admitted an autopsy report into evidence through the testimony of individuals who had not been responsible for preparing them. The autopsy report showed the cause of death to be a "gunshot wound to head." Id. This Court went on to hold that the error was harmless because the information regarding the deceased's cause of death had been exhaustively established by every other witness *1297 who testified for the State. Id. at 566. The trial court in Williams v. State, 440 So.2d 312, 314 (Miss. 1983,) admitted a hospital record regarding the victim's cause of death without presenting as a witness at trial the physician who prepared the report. This was deemed erroneous on the ground that experts often disagree over the types of opinions and conclusions contained in autopsy reports. Id. While it was error to admit these reports, we definitively held that it was harmless in light of the fact that the State produced ample additional evidence establishing the cause of death to be a car collision. Id. The present case is analogous to Flowers and Williams in that the State produced an overwhelming amount of evidence showing that May murdered Hunter. The prosecution presented four eyewitnesses who observed May fire a weapon fatally wounding Hunter. These witnesses identified at trial a .44 magnum as the weapon utilized by May. Through the testimony of three additional eyewitnesses, the State directly linked May to the recovered .44 magnum. The medical examiner was responsible for personally removing lead and a copper casing from the victim's body which was determined by a forensic scientist to be a projectile fired from the exact same.44 magnum recovered by the police. Therefore, it was established beyond a reasonable doubt by evidence other than the autopsy report that the victim's cause of death was a gunshot wound inflicted by May and his .44 magnum. With the evidence against May being so persuasive, we are left to hold that the trial court error entailing the introduction of the coroner's report through the testimony of Smith was harmless beyond a reasonable doubt.

CONCLUSION
There was no abuse of discretion in the denial of the defendants' requests for a severance of their causes as neither defense tended to be prejudicial to the other. Instead, the State produced an overwhelming amount of evidence at trial implicating the defendants equally in the murder of Nathaniel Hunter. The motions for mistrials were based upon evidence producing an insignificant amount of prejudice which was effectively alleviated by the trial judge's admonitions to the jury. Furthermore, the denial of May's requested self-defense instruction was not an abuse of discretion since the bulk of the rejected instruction was a mere duplicate of the self-defense instruction which was granted and which has been expressly approved by this Court. While the trial court erroneously permitted the introduction of the autopsy report without requiring the presence of its author at trial, it was harmless error because the prosecution conclusively established the victim's cause of death with additional evidence. For these reasons, the judgment of the court below is affirmed.
AS TO GOSSETT: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. AS TO MAY: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., McRAE, JAMES L. ROBERTS and SMITH, JJ., concur.
BANKS, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J.
PITTMAN, J., not participating.
BANKS, Justice, concurring in part and dissenting in part:
I am compelled to dissent because I disagree with the resolution of the self-defense instruction question in issue five, with respect to the appellant May.
While the instruction given has been approved as proper for the prosecution, it has not been deemed a sufficient substitute for a forthright defense instruction telling the jury that if the defendant acted in reasonable apprehension of harm to himself, he may be acquitted. The instruction given here is couched in definitional language. It is abstract. It does not tell the jury what to do if it finds certain facts to be true. Clearly, it is supplementary to and explanatory of a main *1298 instruction on self-defense and should not be given standing alone.
The instruction offered by May, then, was not cumulative because the instruction deemed to make it cumulative was not sufficient to the issue. Robinson v. State, 434 So.2d 206 (Miss. 1983), and Flowers v. State, 473 So.2d 164 (Miss. 1985), cited in the majority opinion, do not stand for a contrary view. Robinson dealt with whether another version of the State's instruction was erroneously given, not whether it is an adequate substitute for a self-defense instruction. The focus was upon particular language in a prosecution explanatory instruction. Flowers again condemned the same language. It is of interest that in Flowers, even the condemned instruction concluded with a positive statement of facts, which if found, dictated a verdict of not guilty. Flowers, 473 So.2d at 166.
For the foregoing reasons, I would reverse and remand May's conviction for a new trial.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] Instruction No. S-2 provided as follows: "If you believe from the evidence in this case beyond a reasonable doubt, that the Defendant, Eric May, on the 16th day of March, 1991, did wilfully, unlawfully and feloniously and with malice aforethought shoot and kill Nathaniel Humter, a human being, then it is your sworn duty to find the Defendant, Eric May, guilty as charged. If you do not find that the Defendant, Eric May, is guilty of murder, but you do find from the evidence in this case beyond a reasonable doubt that the Defendant, Eric May, on the date testified about did wilfully, unlawfully, and feloniously, but without malice or in the heat of passion and not in necessary self-defense shoot and kill Nathaniel Hunter, then it is your sworn duty to find the Defendant, Eric May, guilty of manslaughter. But if you find the Defendant is neither guilty of murder or manslaughter, you shall find the Defendant not guilty."