785 So.2d 1071 (2000)
Nelson BAILEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00231-COA.
Court of Appeals of Mississippi.
December 5, 2000.
Rehearing Denied February 20, 2001.
Certiorari Denied May 17, 2001.
*1072 Dan W. Duggan Jr., Brandon, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before McMILLIN, C.J., IRVING, and MOORE, JJ.
IRVING, J., for the Court:
¶ 1. Nelson Bailey and Edward Blount were indicted for murder. Blount was allowed to plead guilty to manslaughter. A trial by jury for Bailey resulted in a verdict of guilty as charged. Following a *1073 denial by the trial court of Bailey's motion for JNOV and new trial, Bailey perfected this appeal wherein he contends that the trial court erred 1) in not granting his motion for a directed verdict and judgment notwithstanding the verdict, or in the alternative, for a new trial, and 2) in permitting certain irrelevant and prejudicial evidence and in allowing improper closing argument comments on the erroneously admitted evidence. We find no merit in Bailey's assertions and affirm his conviction.

FACTS
¶ 2. Furthey Rudd, Jr. was shot to death while sitting in the rear seat of a white 1988 Ninety-Eight Oldsmobile traveling down Interstate 55 in Jackson, Mississippi. Inside the car with Rudd were Bailey and Blount, each of whom gave similar versions of what happened. Blount testified for the State. Bailey testified in his own behalf.
¶ 3. Blount gave this version of what happened. Rudd and Bailey were engaged together in illegal activities, including drug dealing, with Rudd acting as "the boss." According to Blount, Rudd purchased the 1988 Ninety-Eight Oldsmobile for Bailey as a means of transportation.
¶ 4. Blount said that the day before the shooting he and Bailey went to Bailey's hometown of Lexington, Mississippi. While there, Bailey tried, unsuccessfully, to sell cocaine. According to Blount, Bailey was trying to make money to repay Rudd for marijuana. The same day, the two also traveled to Pickens, Mississippi where Bailey bought a 9 millimeter handgun, a .380 caliber handgun and a Tec-9 handgun, paying for them, according to Blount, with cocaine. Bailey already had a.45 caliber handgun in his possession.
¶ 5. Upon returning to Jackson, the two spent the night in a hotel and purchased ammunition for the guns. During this time Blount heard Bailey receive several "pages" which Bailey attributed to his girlfriend and to Rudd. Bailey told Blount that Rudd wanted the title to the Oldsmobile, the .45 caliber gun and the money that Bailey owed Rudd for the marijuana.
¶ 6. On the day of the shooting, Bailey and Blount were driving around town drinking beer and smoking marijuana when Bailey's pager began to "ring." Bailey stopped to make a telephone call to Rudd. Following the phone call, Bailey told Blount that Rudd was again demanding the car, the title to the car, the money and the .45 pistol. In preparation for giving the .45 pistol to Rudd, Bailey ejected the round in the chamber. The three guns purchased the previous day were also in the car. The .380 caliber was the closest in proximity to Blount.
¶ 7. Bailey and Blount drove to a parking lot on County Line Road where they met Rudd. According to Blount, Rudd was outraged. Bailey got out of the car, went over to Rudd and gave him the .45 pistol. Rudd then demanded possession of the car and ordered that the car be vacated. Bailey asked for a ride for himself and Blount to Bailey's girlfriend's house. Rudd agreed and got in the back seat of the car. Bailey sat in the driver's seat and Blount occupied the front passenger seat. Rudd angrily began to demand explanations for his money. Bailey gave him the title to the car and tried to explain where the money had gone. All of this occurred while the three traveled down Interstate 55 South.
¶ 8. Blount testified that he was looking forward through the front windshield during all of this when he suddenly heard shots. He testified that he did not see what Rudd was doing in the back seat before the shooting started. However, it was Blount's testimony that Bailey had *1074 simply turned around and started shooting Rudd in the chest. Blount leaned over to control the vehicle while observing that Bailey and Rudd appeared to be tussling over the gun. Blount testified that he reached into the back seat and began to hold Rudd's arms after Bailey claimed that Rudd was going to kill Bailey. Blount testified that Bailey then pointed the 9 millimeter at him and ordered him to shoot Rudd. Blount shot Rudd three times with the .380 caliber pistol.
¶ 9. Blount testified that he shot Rudd because he feared that Bailey would shoot him if he did not do as he was told. After Blount shot Rudd, Bailey fired five or six more rounds into Rudd. Blount said that he never saw a gun in Rudd's hands during any of this time. Blount testified that Rudd asked Bailey why Bailey shot him and that Bailey told Rudd that he believed Rudd was going to shoot him. Bailey then drove Rudd to the hospital and helped Rudd out of the car and into the emergency area of the hospital. Blount testified that he then drove away in the Oldsmobile at Bailey's insistence.
¶ 10. Jackson Police Officer Dexter Johnson testified that he arrived on the scene at the hospital where Rudd had been taken and spoke with Bailey who explained that Rudd had been injured in a drive-by shooting. Later, when Bailey was confronted with the fact that Rudd had told the police who had shot him, Bailey confessed that he had shot Rudd but claimed that Rudd had pulled a weapon on him and had the weapon pointed at the back of Bailey's head when he began to shoot Rudd.

ANALYSIS OF ISSUES PRESENTED

1. Sufficiency and Weight of Evidence
¶ 11. A motion for a directed verdict or for a JNOV challenges the sufficiency of the evidence to support the conviction. Harveston v. State, 493 So.2d 365, 370 (Miss.1986). A motion addressing the weight of the evidence seeks a new trial and challenges the discretion of the trial judge in the denial of the motion. Malone v. State, 486 So.2d 360, 366 (Miss.1986). The standard of review for a denial of a motion for a directed verdict and for JNOV are the same. Appellate courts will not reverse the trial court unless the appellate court, viewing the evidence and all reasonable inferences therefrom, is convinced that at the conclusion of the trial, no fairminded juror could have found the defendant guilty of the charges. Id. On the other hand, a new trial is not warranted and will not be granted by an appellate court unless the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Gossett v. State, 660 So.2d 1285, 1294 (Miss.1995). The appellate court "must accept as true the evidence which supports the verdict, and a reversal is warranted only where the trial court abused its discretion by denying the movant a new trial." Id.
¶ 12. Bailey argues that the trial judge committed reversible error in failing to grant his motion for a directed verdict and for JNOV because there was insufficient proof that Bailey had the deliberate design or malice aforethought to kill Rudd. Bailey contends that he acted in self-defense. He further claims that, at best, the evidence proved only heat of passion manslaughter as there was no proof of malice aforethought or deliberate design on his part to kill Rudd. Bailey also contends that the verdict is against the weight of the evidence.
¶ 13. The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the *1075 jury. Meshell v. State, 506 So.2d 989, 991-92 (Miss.1987). Wade v. State, 748 So.2d 771, 774 (Miss.1999), holds that:
When a defendant has been found guilty by a jury, appellate authority is limited, and the verdict should not be overturned so long as there is `credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense.' The reviewing court is to examine all of the evidence in a light most favorable to the verdict.... [R]eversal is warranted only where the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty of the offense for which he was convicted.
¶ 14. Gossett v. State, 660 So.2d 1285 (Miss.1995), involved the appeal of a murder conviction wherein the defendant claimed that the victim was shot spontaneously during a scuffle and that the shooting constituted manslaughter at best. Even though the defendant was charged with murder, the jury was instructed on manslaughter as well. The Mississippi Supreme Court upheld the murder conviction finding that the evidence demonstrated "ample time in which to form the requisite intent for the crime of murder." Gossett, 660 So.2d at 1293. The court held that, "[w]hile there was certainly an evidentiary basis for the crime of manslaughter, the trial court properly granted a manslaughter instruction and the jury nevertheless unanimously agreed that Gossett was guilty of murder." Id. In making this determination the Gossettcourt also held that:
Malice aforethought is defined as the equivalent of `deliberate design.' [D]eliberate always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. `Design' means to calculate, plan, contemplate... deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.
Id.
¶ 15. The jury at Bailey's trial was instructed on murder, manslaughter, and self-defense. It chose to convict on the murder charge. We find, after viewing all of the evidence in a light most favorable to the verdict, that reversal is not warranted as the evidence is legally sufficient and the great weight of the credible evidence supports the verdict. The trial judge did not err in refusing to grant Bailey's motion for directed verdict and JNOV, nor did he abuse his discretion in denying Bailey's motion for a new trial.

2. Comments by the Prosecution during Closing Arguments
¶ 16. Bailey argues that the trial judge erred when he admitted a cassette tape[1] and then failed to grant a mistrial when the assistant district attorney held up the tape during closing argument and said:
Ladies and gentlemen, in going through the evidence of the case and looking at something that was in this defendant's possession, it speaks true as to this defendant's attitude. This isn't nothing but another Mississippi murder. (HOLDING UP CASSETTE TAPE.)
¶ 17. The tape was made by the group, Mississippi Mafia, and the name of the tape was "Another Mississippi Murder." The cover displayed three males, each holding an automatic weapon. Bailey contends that the name of the group and the *1076 title of the tape, along with the title of the songs listed on the tape, were suggestive of the musical genre "gangsta rap." Bailey argues that the prosecution used the tape in closing argument to inflame the passions of the jury and to imply somehow that this killing was part of some "larger" or additional murder schemes or to imply a gang or mafia relationship.
¶ 18. The cassette tape was admitted into evidence as an exhibit to the testimony of the crime scene investigator who processed Bailey's car. There was no testimony offered regarding the tape other than that it was found in the car. When the tapes were sought to be admitted, this is what transpired:
Q. Those are the items that you recovered from the glove box?
A. Yes, sir.
MR. DAVIDSON: Move to have them marked and entered as exhibits.
THE COURT: Mark it.
MR. KNOTT: Your Honor, as to the tapes, I am not sure how they are relevant to this case, but I have no problem
THE COURT: Well, I understand. I will let them be marked. I don't see any relevance either. Mark them.
¶ 19. It may be unclear from the discussion whether counsel for Bailey understood that the tapes were being admitted into evidence. Also, inasmuch as counsel did not get a chance to complete his statement of position on the admissibility of the tapes before he was interrupted by the court, it is likewise unclear whether he was on the verge of stating no objection to their admissibility or no objection to their being marked for identification. Further, the court's statement, "Mark them," is unclear as to whether the court intended that they be marked for identification only or marked as exhibits. In any event, the record indicates that when the assistant district attorney made the complained of statements during closing argument, Bailey's counsel responded as follows:
MR. KNOTT: Objection, Your Honor. That has not been introduced into evidence.
MR. DAVIDSON: I believe it is, Your Honor.
MR. KNOTT: No. It was marked for identification. May we approach.
THE COURT: Is that marked into evidence?
(BENCH CONFERENCE OUT OF THE HEARING OF THE JURY)
MR. KNOTT: Your Honor, it was my understanding that was only marked for identification only. In fact, you mentionedI did not understand you introduced this into evidence. You mentioned that you didn't see the relevance of that.
THE COURT: Do you have your list there of the ones in evidence?
THE COURT REPORTER: It is in evidence. (EXHIBIT NO. 24.)
THE COURT: It is in evidence.
¶ 20. While is may be unclear whether counsel knew that the tapes had been admitted into evidence, it is clear that he did not object to the prosecutor's closing argument on the basis that he argues here. He did not object on the ground that the tape improperly inflamed the passions and prejudices of the jurors. The trial judge cannot be put in error on a matter which was not presented to him for decision. Crenshaw v. State, 520 So.2d 131, 135 (Miss.1988). Moreover, in light of the overwhelming evidence against Bailey, even if it were error to allow the comments made in closing argument, we are certain such error was harmless. This issue lacks merit.
*1077 ¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.
NOTES
[1] Several tapes by different artists were admitted. However, the focus in this appeal is on the one tape discussed in this opinion.