SOUTHWICK, P.J.,
for the Court:
¶ 1. After a jury trial Robert Johnson was convicted on three counts of armed robbery. He argues on appeal that the verdict was against the overwhelming weight of the evidence and that a witness was not qualified as an expert. Finding no merit to these assignments of error, we affirm.
*992 FACTS
¶ 2. At approximately midnight, Mercile Hayes was robbed at gunpoint in the pai-k-ing lot of a casino. She testified that she was sitting in her car looking through her purse for her bank card when she was approached by a man who pointed a gun at her chest and told her to give him her purse. She gave the man the purse and watched him be driven away as a passenger in a dark colored automobile. She immediately reported the robbery to the casino’s security. Later that day Mrs. Hayes identified Robert Johnson in a police lineup as the man who had robbed her at gunpoint. At trial, she again identified Johnson.
¶ 3. A short time later, at approximately 12:40 a.m., Ricky Talapin, a security officer at the same casino noticed a suspicious car in the parking lot. He identified the vehicle as a dark colored vehicle with shiny chrome rims. At trial, Talapin testified that Johnson was the passenger in the automobile. Due to his suspicion, the guard recorded the tag number of the automobile.
¶ 4. At approximately 1:00 a.m., at a nearby casino, Keith and Tammy Moore had just arrived and were exiting their car when they were approached by a man holding a gun. He told them to throw everything on the ground. At the time Tammy Moore was holding a purse and Keith Moore a shaving kit. The couple threw both items to the ground and they were retrieved by the robber. Mr. Moore testified that the robber got into a dark colored automobile with shiny rims. At trial, Mr. Moore identified Johnson as the man who had robbed them.
¶ 5. Law enforcement officials in the area were alerted to the dark colored automobile with shiny chrome rims. Larry White, an officer with the Tunica Police Department, was on patrol that morning. “While stopped at a convenience store, White noticed a car that matched the description given in the alert. White followed the vehicle as it left the convenience store, called for assistance and then pulled the vehicle over. The officer testified at trial that the driver was Robert Johnson. A search of the vehicle uncovered a handgun, a brown shaving kit and a credit card with Mercile Hayes’s name on it. The automobile also had the same tag number as the automobile that was observed by security guard Talapin earlier that day. Johnson and his passenger were arrested. After a jury trial, Johnson was convicted of the three different armed robberies.
DISCUSSION

I. Weight of the evidence

. ¶ 6. Johnson argues that his motion for a new trial should have been granted because the verdict was against the overwhelming weight of the evidence. In support of his argument, he contends that the testimony of the State’s witnesses was “tenuous,” as opposed to his own testimony which was “very consistent and coherent.”
¶ 7. Whether to grant a new trial on a claim that the verdict was against the overwhelming weight of the evidence is a matter for the exercise of sound discretion by the trial judge. McClain v. State, 625 So.2d 774, 781 (Miss.1993). A new trial will not be ordered on appeal unless affirming the conviction “would be to sanction an unconscionable injustice.” May v. State, 460 So.2d 778, 781 (Miss.1984). In making that evaluation, we will accept as true the evidence that is consistent with the verdict. Gossett v. State, 660 So.2d 1285, 1294 (Miss.1995).
¶ 8. We have already described the evidence. Taking this abundant amount of evidence as true, we find that the verdict *993 was not against the overwhelming weight of the evidence.

II. Expert testimony

¶ 9. The State called as an expert witness Wanda Vasser, an employee in the surveillance department of one of the casinos. The trial court rejected defense counsel’s objection that Vasser did not qualify as an expert. She testified as to certain details shown on the video from the parking lot surveillance camera. Johnson argues that this was error because the witness allegedly had no particular knowledge of the interpretation of film which was superior to that of the jury. She was, in his view, merely a lay witness being allowed to testify as an expert.
¶ 10. One of the Mississippi Rules of Evidence applies:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
M.R.E. 702. “It is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if the person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by laymen.” Henry v. State, 484 So.2d 1012, 1015 (Miss.1986).
¶ 11. In order to decide whether Vasser had the necessary expertise, we examine her testimony. On voir dire she stated that she had received three years of on-the-job-training regarding video surveillance and interpretation. Her testimony also revealed that she was trained on how to identify specific objects and events from the casino surveillance cameras.
¶ 12. The testimony indicated that she had taken several different videos in order to make the tape that was shown to the jury. Irrelevant sections of several hours of tape were omitted in order to prepare the relevant sections for use in the courtroom. Vasser said the tape that combined scenes from different cameras accurately revealed what occurred that night. No appellate argument is made regarding the propriety or accuracy of that editing.
¶ 13. Vasser described the location of the cameras and then was asked to step down from the witness chair and explain what was being seen as the tape was played. She told the jurors where in the parking lot different scenes on the tape were located, such as the employee entrance, back parking lot, and other locations. There was a clock display on the tape, shown in military time such as 23:57 for one scene. She explained the meaning of that. The film was somewhat blurry. At one stage she said to the jury “see the white get out of the car? That’s somebody in a white shirt,” and then says that particular scene “is where the incident supposedly took place.”
¶ 14. This witness never attempted to identify anyone who appeared in a scene on the film. Instead, she described locations, time, and the general mechanics of how the edited film was made.
¶ 15. Because of her experience with video surveillance, she was able to locate and interpret the events as they were recorded by the casino surveillance camera. We find this to be technical knowledge which assisted the jury in understanding the evidence. That is the purpose of Rule 702 and we find no error.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF THREE COUNTS OF ARMED ROBBERY AND SENTENCE OF CONCURRENT *994 TERMS OF EIGHTEEN YEARS FOR EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES TO RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. JOHNSON SHALL NOT BE ELIGIBLE FOR PAROLE AND IS TO PAY RESTITUTION TO VICTIMS. ALL COSTS ARE TO BE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., CONCUR.