981 So.2d 1007 (2007)
Mikimie Tenille BROWN a/k/a Mikimie Brown a/k/a Mikimie Kim Brown, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-02058-COA.
Court of Appeals of Mississippi.
December 4, 2007.
Rehearing Denied March 11, 2008.
*1010 George T. Holmes, Leslie S. Lee, Jackson, Scott Joseph Schwartz, Hattiesburg, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Mikimie "Kim" Tenille Brown was charged with murdering her ex-boyfriend and attempting to set fire to his pick-up truck. A Marion County Grand Jury indicted her on one count of murder, one count of aggravated assault, and one count of attempted arson. Trial was held in the Marion County Circuit Court. Brown was found guilty of murder and attempted arson but was acquitted of aggravated assault. She was sentenced to life imprisonment for the murder and two years for the attempted arson with the two years to run concurrently with the life sentence all in the custody of the Mississippi Department of Corrections. Brown appeals asserting that the trial court's decision be reversed and remanded for a new trial, assigning the following seven issues for review:
1. Whether the circuit court erred by denying Brown's motion to suppress her written confession, because the confession to law enforcement officers was not free and voluntary.
2. Whether the circuit court erred by allowing the State to introduce improper lay opinion testimony regarding Brown's mental status.
3. Whether the circuit court erred by refusing to allow Brown to introduce evidence regarding her mental state at the time of the shooting.
4. Whether the jury instruction C-4 regarding culpable negligence failed to properly state the law.
5. Whether the circuit court erred by allowing the State to improperly bolster its case with improper redirect examination of State witnesses.
6. Whether Brown was prejudiced by improper closing argument outside of the evidence.
7. Whether a verdict of manslaughter instead of murder was more appropriate.
Finding no error, we affirm.

FACTS
¶ 2. On the morning of December 12, 2000, Gerald Dillon was found dead on the kitchen floor of his home with a fatal gunshot wound to his chest. Investigators with the Marion County Sheriff's Department and Mississippi Highway Patrol were called to Dillon's home in Foxworth on Highway 35 South in Marion County. While on the scene, they found two spent projectiles that were determined to have been discharged from a 9mm Ruger pistol. They also were able to determine that Kim Brown, one of Dillon's girlfriends, was a suspect in the shooting. A search warrant was obtained and executed at the home of Brown's father on whose property she resided in a separate mobile home. A 9mm Ruger pistol, belonging to Brown's father, was recovered and later identified as the weapon from which the fatal round which ended Dillon's life was fired.
¶ 3. While investigators were executing the warrant, Brown arrived at her father's house at which time she was asked to give an interview at the Marion-Walthall County Correctional Facility. Brown, accompanied by family members, later arrived at the facility on her own accord and was subsequently read her Miranda rights. After waiving her rights in writing, Brown gave a written statement in which she confessed to shooting Dillon. According to *1011 her statement to police, Brown and Dillon were dating at the time and that she went to Dillon's house to discuss their relationship. She admitted that she took her father's 9mm Ruger pistol with her. Brown stated that when she entered Dillon's home, an argument ensued, and he grabbed her. She further stated that in an attempt to resist, the gun accidentally discharged resulting in Dillon's death. Brown also admitted that, before she left Dillon's house, she attempted to set fire to his pick-up truck but was unsuccessful.
¶ 4. At trial, LaTeya Watts, another girlfriend of Dillon's, testified for the State that she was present at Dillon's home on the morning of the shooting. Watts stated that she stood in the kitchen and overheard Dillon and Brown arguing in an adjoining room. Shortly thereafter, Watts heard a gunshot, saw sparks, and witnessed Dillon stumble back into the kitchen before falling dead onto the kitchen floor. Then, Watts stated that Brown entered the kitchen and pointed the pistol at her face. Watts attempted to push the gun away from her face at which time it discharged a second round. Watts was not hit by the gunfire, but the scuffle caused her to fall to the floor. Shortly thereafter, Watts was able to convince Brown to allow her to put her shoes on and leave. Watts testified that before she left, Brown threatened to come after her if Watts told anyone about the shooting.
¶ 5. The State also called Donovan Abram to testify that he accompanied Brown to Dillon's house on the morning of the shooting unaware of any expected confrontation. Abram testified that he dropped Brown off and waited outside Dillon's house. When Brown returned to the car, Abram stated that she tossed the pistol on the floorboard. According to Abram, while on their way home Brown confessed to shooting Dillon and urged Abram to take her back to Dillon's house. Abram refused to go back.
¶ 6. Both prior to and during the trial, there was a motion to suppress Brown's written confession to the officers based on her history of mental problems and alleged coercion and promises of leniency by the officers. Brown contended that this prevented her from giving a voluntary statement. The court subsequently denied the motion finding sufficient evidence that the statement was "knowingly and intentionally" given.
¶ 7. The State presented evidence that Brown had threatened Dillon before the shooting. Brown countered this by presenting evidence that she was exposed to ongoing physical abuse by Dillon. During her case-in-chief, Brown sought to introduce evidence of her alleged mental illness, including post-traumatic stress disorder and borderline personality disorder. However, the trial court denied this request. Based on the evidence of prior abuse, Brown's counsel argued self-defense and accident during closing.
¶ 8. After considering the evidence in the case, the jury returned a verdict of guilty on one count murder, one count of attempted arson, and not guilty on one count of aggravated assault. Brown filed motions for directed verdict, judgments notwithstanding the verdict, or in the alternative a new trial, all of which were denied by the trial court. Subsequently, Brown filed this appeal.

ISSUE AND ANALYSIS
1. Whether the circuit court erred in denying Brown's motion to suppress.
¶ 9. Brown argues that because she suffered from post-traumatic stress disorder and borderline personality disorder, her written confession given to law enforcement *1012 was rendered involuntary. Further, she contends that the confession was the product of persuasion, coercion, and promises of leniency by law enforcement. She argues that the trial court erred when it denied her motion to suppress. Officers Tim Singley and Darrell Perkins testified that Brown did not exhibit any signs that she was of unsound mind; that she voluntarily came to the police station to give the statement; and that the confession was signed of her own free will. Further, both officers testified that they made no promises in exchange for Brown's statements. The State argues that under these circumstances, the trial judge correctly overruled Brown's motion to suppress.
¶ 10. The circuit court judge sits as the fact-finder in determining whether a confession was freely and voluntarily given. McCarty v. State, 554 So.2d 909, 911 (Miss.1989). Initially, the judge must determine whether the defendant was adequately warned and "whether there has been under the totality of the circumstances a knowing and voluntary waiver of the accused's privilege against self-incrimination." Gavin v. State, 473 So.2d 952, 954 (Miss.1985); see, e.g., Porter v. State, 616 So.2d 899, 907-08 (Miss.1993); Pierre v. State, 607 So.2d 43, 50 (Miss.1992).
¶ 11. To be admissible, confessions must be given voluntarily and must not be the product of inducements, threats or promises. Morgan v. State, 681 So.2d 82, 86 (Miss.1996). The State bears the burden of proving, beyond a reasonable doubt, the voluntariness of a statement and its admissibility. Id. The prosecution can meet this burden and establish a prima facie case by presenting the testimony of an officer or other person with personal knowledge regarding whether the statement or confession was made voluntarily. Chase v. State, 645 So.2d 829, 838 (Miss. 1994). To rebut the State's prima facie case, the defendant must offer testimony that coercion, threats or offer of reward induced the confession. Tolbert v. State, 511 So.2d 1368, 1376 (Miss.1987) (quoting Agee v. State, 185 So.2d 671, 673 (Miss. 1966)). If the defendant is able to rebut this prima facie case, the State is obligated to bring forth all witnesses to the confession. Lesley v. State, 606 So.2d 1084, 1091 (Miss.1992).
¶ 12. Once a statement has been found admissible in a preliminary hearing pursuant to the correct legal standard, its admission into evidence will be upheld on appeal unless the appellate court finds that the trial court manifestly erred or that the trial court's decision to admit the statement was against the overwhelming weight of the evidence. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996); Hunter v. State, 684 So.2d 625, 633 (Miss.1996); Frost v. State, 483 So.2d 1345, 1350 (Miss.1986).
¶ 13. The trial court conducted a hearing on the motion to suppress Brown's confession. During that hearing, both officers present at the time the confession was taken testified that Brown voluntarily came to the police station without assistance, coercion, or persuasion by police. While there, the officers observed that Brown had no problem remembering the event in question and showed no signs of being under the influence of intoxicants or a mental disability. On the contrary, Brown was able to recall in detail the places she went, people that she talked to, and the things that she did both at the time of the shooting and subsequent to the time of shooting. Further, the officers testified that Brown was given the opportunity to write anything that she wanted in her statement without their involvement.
¶ 14. Brown attempts to support her claim of involuntariness with the testimony of Dr. Jean Hawks, a clinical psychologist, who testified that Brown suffered from *1013 diminished capacity at the time of the shooting. However, this diagnosis was disputed by the State's own psychologist who opined that, though Brown did suffer from a "severe personality, borderline personality disorder," she was able to understand the nature of her actions and was not acting under diminished capacity at the time of the shooting. Brown further relies on Dr. Hawks's testimony in which she stated that Brown told her that her statement to police was coerced by promises of leniency made by the officers. This testimony is also disputed by that of the officers who denied that they promised Brown anything. As previously stated, since there was disagreement as to Brown's mental state and as to whether her confession was coerced by the police, the trial judge had to look at the totality of the circumstances in carrying out his fact-finding function. Wimberly v. State, 760 So.2d 800, 802-03(¶ 6) (Miss.Ct.App.2000). In making these findings of fact, "where, on conflicting evidence, the lower court admits a statement into evidence, this Court generally must affirm." Id. (quoting Morgan, 681 So.2d at 87).
¶ 15. We find the trial court did not commit manifest error in finding that Brown's statement was voluntarily and knowingly made. The State made a prima facie case of voluntariness. Brown, even with her claims of diminished capacity and coercion, was unable to rebut the prima facie case of voluntariness. The trial judge applied a correct legal standard, and the judge's finding of voluntariness was not against the overwhelming weight of the evidence. Accordingly, this Court finds no error in the denial of the motion to suppress.
2. Whether the circuit court erred in admitting lay opinion testimony of Brown's mental status.
¶ 16. Brown argues that the trial court committed reversible error by allowing Mississippi Highway Patrol Investigator Darrell Perkins to testify, over Brown's objection, that Brown did not appear to be suffering from "any mental disease or illness." Brown contends that Officer Perkins's testimony concerning Brown's mental state amounted to expert opinion testimony governed by Rule 702 of the Mississippi Rules of Evidence. It is Brown's contention that Officer Perkins's testimony, as Rule 702 expert opinion testimony, should not have been admitted because Officer Perkins had not been offered, qualified, and tendered as an expert witness. The State responds that Officer Perkins's testimony was opinion testimony by a lay witness admissible under Rule 701 of the Mississippi Rules of Evidence. Therefore, he did not have to be qualified as an expert prior to tendering his opinion.
¶ 17. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Parker v. State, 606 So.2d 1132, 1136 (Miss.1992) (quoting Johnston v. State, 567 So.2d 237, 238 (Miss.1990)). "Unless the trial judge's discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling." Parker, 606 So.2d at 1136 (citing Shearer v. State, 423 So.2d 824, 826 (Miss.1982)).
¶ 18. Under Rule 701 of the Mississippi Rules of Evidence a lay witness is permitted to give opinion testimony in certain limited circumstances. Smith v. State, 725 So.2d 922, 925(¶ 6) (Miss.Ct.App. 1998) (citing Newsom v. State, 629 So.2d 611, 614 (Miss.1993)); M.R.E. 701. If the witness is not testifying as an expert under Rule 702, his testimony in the form of opinions or inferences is limited to those which are: "(a) rationally based on the perception of the witness and (b) helpful to *1014 the clear understanding of his testimony or the determination of a fact in issue." Smith, 725 So.2d at 925(¶ 6). Rule 701 allows a lay witness to testify as to his opinion on matters of which he has first-hand knowledge which other lay people do not have. Id. In contrast where "in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E Rule 702 opinion and not a Rule 701[lay] opinion." Id. Rule 701 lay opinions require no specialized knowledge, whereas testimony requiring particular knowledge to assist the trier of fact is expert testimony governed by Rule 702. Cotton v. State, 675 So.2d 308, 311 (Miss.1996).
¶ 19. This Court has generally held that opinion testimony based on the personal observations of the witness should be considered lay opinion under Rule 701. See George v. State, 812 So.2d 1103, 1106 (¶ 10-12) (Miss.Ct.App.2001); Smith, 725 So.2d at 925-26(¶ 7). In Smith, the State sought to introduce testimony by a police officer that a shoe print found on the back door of a burglary victim's house appeared to be of the "same pattern" as the shoe print found in the defendant's house. Smith, 725 So.2d at 925(¶ 4). The defendant objected on the ground that the opinion constituted expert testimony, and was therefore, inadmissible because the officer had not been qualified as an expert. The trial court overruled the objection and allowed the testimony. On appeal, this Court affirmed the decision of the trial court. In doing so, we noted that the officer did not testify that the shoe print in question was actually made by defendant's shoes, "a conclusion which most certainly would have required specialized knowledge, i.e., an expert opinion under Rule 702." Id. at (¶ 7). Instead, we held that the officer's testimony amounted to nothing more than a first-hand observation rationally based on his personal perceptions, and therefore, was admissible as a lay opinion under Rule 701. Id.; see also George, 812 So.2d at 1106(¶ 12) (holding that a witness's opinion that the defendant was "obviously intoxicated" based on her observation of the defendant's appearance was admissible lay opinion testimony).
¶ 20. Similarly, in the case at bar, Officer Perkins's testimony concerned Brown's appearance at the time she was questioned by police. State's counsel first asked Officer Perkins if he had experience dealing with anyone under the influence of drugs, or alcohol, or with mentally disturbed individuals. He replied in the affirmative to each question. Officer Perkins was then asked if the defendant appeared to be under the influence of drugs, or alcohol or be mentally disturbed, to which he answered that Brown did not appear so. We point out that the word "appeared" is key in this instance, as it focuses on what Officer Perkins believed based on his personal perception of Brown at the time of questioning. Similar to the testimony in Smith, Officer Perkins did not testify that he was of the opinion that Brown actually suffered a mental disability. It is obvious that such an opinion would require a medical diagnosis to be given by an expert under Rule 702. Instead, Officer Perkins testified that based on his first-hand observations, Brown did not appear to be mentally disabled. The State is correct in that Perkins's observations on the day Brown was questioned did not require any specialized knowledge to assist the trier of fact. Perkins's opinion was based on first-hand knowledge and his own perception of Brown while he was questioning her. Further, Perkins's testimony was helpful to the determination of a fact in issue: whether the officers believed Brown's confession to be voluntary. Accordingly, it is this Court's conclusion that Officer Perkins's *1015 testimony regarding Brown's mental state was admissible lay opinion testimony under Rule 701.
¶ 21. Brown cites Goodson v. State, 566 So.2d 1142 (Miss.1990) for the proposition that when there is a substantial probability that the jury would be misled by a witness's opinion, the court should not admit it as it violates the defendant's right to a fair trial. However, Goodson concerned the scope of admissible expert testimony, specifically in cases involving sexual abuse of children. Our supreme court noted that a witness must possess a heightened level of expertise in the field to render an opinion of whether a child's behavior exhibited sexual abuse given that there is no scientifically established child sexual abuse profile accepted by experts in that field. Id. at 1146-47. Our decision in the case sub judice does not disturb the holding in that case. As previously stated, we are of the opinion that Officer Perkins's testimony did not fall within the realm of expert testimony as it did not require him to possess some experience or expertise beyond that of the average, randomly selected adult. Further, we do not believe there was a substantial probability that the jury would be misled by Perkins's testimony as he did not purport to be making any type of medical diagnosis.
¶ 22. We, therefore, hold that the substance of Officer Perkins's testimony satisfied both requirements for admissibility as a lay witness opinion under Rule 701. The trial court did not abuse its discretion in admitting Officer Perkins's testimony. This assignment of error is without merit.
3. Whether the circuit court erred by refusing to allow Brown to introduce evidence of her mental state at the time of the shooting.
¶ 23. By motion with a proffer, Brown sought to introduce into evidence the testimony of Dr. Jean Hawks who testified for the defense at the pretrial hearing on Brown's motion to suppress. Dr. Hawks testified that it was her opinion that Brown suffered from diminished capacity at the time of the alleged criminal acts. The trial court denied Brown's request. Brown argues that the court erred because the evidence was relevant as a mitigating factor to her ability to form the statutory intent to commit the crime of murder.
¶ 24. Our supreme court has generally held that "diminished capacity" is not a recognized defense to a criminal charge in Mississippi. See Stevens v. State, 867 So.2d 219 (Miss.2003); Cannaday v. State, 455 So.2d 713 (Miss.1984); Garcia v. State, 828 So.2d 1279 (Miss.Ct. App.2002). In order to prove that a defendant had the mental capacity to commit the crime, the State must only show that he knew right from wrong under the M'Naughten test. Cannaday, 455 So.2d at 720 (citing Edwards v. State, 441 So.2d 84 (Miss.1983)).
¶ 25. During the hearing on Brown's motion to suppress, the trial court was presented evidence that the defendant knew right from wrong at the time the crime was committed. Brown never attempted to raise insanity as a defense at trial. Instead, Brown was trying to assert a diminished capacity defense in hopes of mitigating her crime to manslaughter as opposed to murder. As previously stated, diminished capacity is not a defense to a criminal charge in this state. Therefore, the trial court did not abuse its discretion by refusing to allow Brown to admit evidence of her mental state. The issue is without merit.
4. Whether the jury instruction C-4 regarding culpable negligence failed to properly state the law.
¶ 26. At issue, is the instruction given by the court sue sponte as C-4, *1016 or Jury Instruction No. 10 which reads: "`Culpable Negligence' is conduct which exhibits or manifests a wanton or reckless disregard for the safety of human life, or such indifference to the consequences of the defendant's act under the surrounding circumstances as to render his conduct tantamount to willfulness." Brown argues that the law on culpable negligence was improperly stated. She contends that, as worded, the instruction required the jury to deliberate whether the alleged culpably negligent act was "tantamount to willfulness" based on surrounding circumstances. Brown claims that this language gave the jury no distinguishable difference between murder and culpable negligence manslaughter. The State maintains that the court did not err in giving the subject instruction as it closely followed language which has been approved by our supreme court.
¶ 27. In Johnson v. State, 908 So.2d 758 (Miss.2005), our supreme court set forth the familiar standard of review for jury instructions. It stated:
In reviewing a challenge to jury instructions, the instructions actually given must be read as a whole. Williams v. State, 863 So.2d 63, 65(¶ 5) (Miss.Ct.App. 2003). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.
Johnson, 908 So.2d at 764(¶ 20).
¶ 28. In this case, the instruction under attack does fairly announce the law regarding manslaughter by culpable negligence. Section 97-3-47 of the Mississippi Code Annotated (Rev.2006) provides that the offense of manslaughter shall include: "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title. . . ." Further, our supreme court has more recently defined manslaughter by culpable negligence as, "such gross negligence . . . as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." Shumpert v. State, 935 So.2d 962, 967(¶ 14) (Miss.2006) (citing Evans v. State, 562 So.2d 91, 95 (Miss.1990)).
¶ 29. Given that the jury instruction at issue regarding manslaughter by culpable negligence has previously been approved by our supreme court and offers a correct statement of law, we find no error on the part of the trial court. The issue is without merit. Further, because Brown did not bring her objection to the instruction or the language before the trial court, this issue is also procedurally barred as having been waived. See Morgan v. State, 741 So.2d 246, 253(¶ 15) (Miss.1999) (holding that in order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue).
5. Whether the circuit court erred by allowing the State to improperly bolster its case with improper redirect examination of State witnesses.
¶ 30. Brown argues that there were two instances when the trial court allowed the State an unfair advantage by exceeding the scope of redirect examination. First, Brown claims the court committed reversible error by allowing the State to question LaTeya Watts regarding a written statement which she gave to the investigating officers in a manner that exceeded the scope of cross-examination. The State was permitted to read Watts's statement "line by line" while periodically stopping to ask Watts if what was read *1017 was correct. Second, Brown claims that the court erred by allowing the State to question Officer Tim Singley during redirect about the second discharge of the 9mm Ruger pistol even though the defense never raised the issue on cross-examination. Brown alleges that these instances taken together resulted in an irreparable dilution of her rights of confrontation and cross-examination, under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 3, Sections 14 and 26 of the Mississippi Constitution.
¶ 31. As previously stated, this Court will not reverse the decision of a trial court regarding evidentiary matters unless the discretion of the trial court was "so abused as to be prejudicial to a party." Farris v. State, 906 So.2d 113, 119-20(¶ 20) (Miss.Ct. App.2004) (citing Beech v. Leaf River Forest Prods., 691 So.2d 446, 448 (Miss.1997)). "Trial courts have broad discretion in allowing or disallowing redirect examination of witnesses and when the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on redirect is unquestionably entitled to elaborate on the matter." Manning v. State, 835 So.2d 94, 99-100(¶ 15) (Miss.Ct. App.2002) (citing Greer v. State, 755 So.2d 511, 516(¶ 14) (Miss.Ct.App.1999)). Consequently, we will not disturb a trial court's ruling on matters pertaining to redirect examination unless there has been a clear abuse of discretion. Farris, 906 So.2d at 119-20(¶ 20) (citing Lloyd v. State, 755 So.2d 12, 14(¶ 9) (Miss.Ct.App.1999)).
¶ 32. We find nothing in the record which shows that the judge abused his discretion by permitting the redirect examination at issue. Brown is incorrect in her assertion that the State exceeded the scope of redirect examination by questioning Watts about her written statement. In fact, it was Brown's counsel who placed the statement at issue by introducing it into evidence on cross-examination. Given that it was Brown who opened the door to the subject matter, the State was entitled to explore the matter on redirect. See Manning, 835 So.2d at 99-100(¶ 15).
¶ 33. Brown further argues that the State was allowed to improperly bolster Watts's testimony by asking multiple leading questions throughout redirect. She cites McDavid v. State, 594 So.2d 12, 16-17 (Miss.1992) for the proposition that allowing repeated leading questions on material issues is reversible error. However, our supreme court has stated that, "trial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision." Whitlock v. State, 419 So.2d 200, 203 (Miss. 1982). We do not believe that allowing the State to ask leading questions regarding Watts's written statement caused any harm to Brown. As previously stated, the statement had already been admitted into evidence, and the State's line of questioning only verified whether the contents of that document were in fact correct.
¶ 34. Brown's second assignment of error with regard to improper redirect examination has little merit. It involved one question posed to Officer Tim Singley regarding whether Brown said anything in her statement about the second shot fired from the murder weapon. Again, Brown's counsel opened the door to this inquiry on cross-examination by alluding to the argument that Brown put everything into her written confession that was germane to the case. The purpose of the State's redirect examination of Officer Singley was to show that there were material facts that Brown left out of her written confession, including information regarding the second shot that was fired, a fact already proven at trial. The trial court viewed the State's redirect *1018 examination into this area as proper rebuttal, and we find no error in that assertion.
¶ 35. Accordingly, we find the trial court did not abuse its discretion by allowing the subject redirect examination of either LaTeya Watts or Officer Singley. The issue is without merit.
6. Whether Brown was prejudiced by improper closing argument outside of the evidence.
¶ 36. Brown claims that during closing argument the State misrepresented to the jury that Donovan Abram, who accompanied Brown to Dillon's house on the morning of the shooting, was convicted of a federal offense at the time of the incident. Abram was in fact convicted of federal bank robbery after the shooting had occurred. Brown argues that the State intentionally misrepresented this fact in order to mislead the jury as to Brown's criminal intent to commit murder. Brown contends that the State exceeded the boundaries of fair comment during closing, and that the trial court erred by not sustaining her objection and advising the jury to disregard the matters.
¶ 37. It has been held by our supreme court that "lawyers on both sides are generally given wide latitude during closing arguments." Ahmad v. State, 603 So.2d 843, 846 (Miss.1992); Neal v. State, 451 So.2d 743, 762 (Miss.1984); Bullock v. State, 391 So.2d 601, 610 (Miss.1980). The court has explained that not only should the State and defense counsel be given wide latitude in their arguments to the jury, but also the court should be very careful in limiting the free play of ideas, imagery, and personalities of counsel in their argument to jury. Ahmad, 603 So.2d at 843; Johnson v. State, 477 So.2d 196, 210 (Miss.1985). Given the latitude afforded to an attorney during closing argument, any allegedly improper prosecutorial comments must be considered in context, considering the circumstances of the case, when deciding on their propriety. McGilberry v. State, 741 So.2d 894, 910(¶ 44) (Miss.1999) (citing United States v. Bright, 630 F.2d 804, 825 (5th Cir.1980)). The prosecutor is also limited "to arguing facts introduced in evidence, deductions and conclusions that may be reasonably drawn therefrom, and application of law to facts." Holland v. State, 705 So.2d 307, 343 (¶ 137) (Miss.1997) (citing Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991)).
¶ 38. Brown argues that the prosecutor went outside the permissible bounds by inferring that Abram was a convicted felon and using it as proof of Brown's criminal animus, hoping that the jury would hold Brown guilty by association. She cites Johnson v. State, 596 So.2d 865 (Miss. 1992) and Flowers v. State, 842 So.2d 531 (Miss.2003) in support of her argument. However, both of these cases held that the prosecutor's closing argument was improper and highly prejudicial to the defendant because it was based on alleged facts that were not supported by the record. In this case, the prosecutor did not base his argument on facts that were unsupported by the evidence presented at trial.
¶ 39. As our previous case law directs, we must consider the context in which the prosecutor's statements were made. During Brown's closing argument, her counsel attempted to argue that Brown would not have brought a witness to the scene of the crime had she truly intended to murder Dillon. The prosecutor responded to the claim during rebuttal by stating:
Now, why she took Donovan up there, I'm not quite sure. And there are several theories that I've thought about that. One of those theories has to do with what he says. You know, Donovan's *1019 pulling 48 months in the federal prison for this bank deal. So if Mikimie is going to go off to do a crime, maybe she found somebody she thought would be a good person to go with her.
Brown's counsel timely objected, and the prosecutor informed the judge that he planned on clarifying his statement. The judge allowed the prosecutor to continue in which he stated: "He said they had known each other. I think he said they'd been to school together, if I'm not mistaken. His bank larceny happened later. But you generally know what kind of people your friends are." It is important to note that in refuting defense counsel's claims, the prosecutor:
was not required to be logical in argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever he deems proper, so long as he does not become abusive and go outside the confines of the record.
Brown v. State, 690 So.2d 276, 296 (Miss. 1996) (quoting Minnick v. State, 551 So.2d 77, 93 (Miss.1988) (overruled on other grounds)). Indeed, we have held that "the prosecutor may comment on facts in evidence and may draw proper deductions therefrom." Id. Here, the prosecutor attempted to call Abram's character into question in order to explain why Brown brought him to the scene on the day of the murder. In doing so, he stated that Abram was serving a forty-eight-month sentence in federal prison for bank robbery. He did not state that Abram served that time prior to accompanying Brown, but rather clarified the statement by stating that it occurred "later on." We find nothing wrong with this argument.
¶ 40. Even if the prosecutor's argument were held to be improper, given the circumstances and the context in which it was made, we cannot say that it is of the kind which requires reversal. The standard of review which this Court must apply to lawyer misconduct during opening statements or closing arguments is "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State, 777 So.2d 659, 661 (Miss.2000) (citing Ormond v. State, 599 So.2d 951, 961 (Miss.1992)). Given, the overwhelming evidence of guilt against Brown, including her own written confession, we do not believe the jury's decision was influenced by any alleged prejudice resulting from the prosecutor's closing argument. Further, the jury was instructed by the trial judge that remarks made by counsel were only meant to be helpful in explaining the evidence, but were not to be considered evidence. The court also instructed that if any remark of counsel was not based on evidence, then the jury must disregard it. We must also note that the trial court afforded Brown's counsel the opportunity to clarify any discrepancies that he perceived regarding Abram's federal conviction. However, Brown's counsel explicitly declined to do so. Accordingly, this issue is without merit.
7. Whether a verdict of manslaughter instead of murder was more appropriate.
¶ 41. Brown requests that in the alternative to a new trial, this Court reduce her murder conviction to manslaughter. Brown argues that her motion for directed verdict should have been granted based on the theory of "imperfect defense," heat of passion manslaughter. The State argues that the jury's verdict should not be set *1020 aside as it was not against the overwhelming weight of the evidence.
¶ 42. When a defendant has been found guilty by a jury, appellate authority is limited, and the verdict should not be overturned so long as there is "credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense." Davis v. State, 586 So.2d 817, 819 (Miss.1991). "The reviewing court is to examine all of the evidence in a light most favorable to the verdict." Washington v. State, 800 So.2d 1140, 1144(¶ 10) (Miss.2001). Reversal is warranted only where the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty of the offense for which he was convicted. Id.
¶ 43. Gossett v. State, 660 So.2d 1285 (Miss.1995), involved the appeal of a murder conviction wherein the appellant claimed that the victim was shot spontaneously during a scuffle and that the shooting constituted, at best, manslaughter. Even though the appellant was charged with murder, the jury was instructed on manslaughter as well. The Mississippi Supreme Court upheld the murder conviction finding that the evidence demonstrated "ample time to form the requisite intent for the crime of murder." Id. at 1293. The court held that, "[w]hile there certainly was an evidentiary basis for the crime of manslaughter, the trial court properly granted a manslaughter instruction and the jury nevertheless unanimously agreed that Gossett was guilty of murder." Id. In making this determination the Gossett court also held that:
Malice aforethought is defined as the equivalent of "deliberate design."
[D]eliberate always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, contemplate . . . deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.
Id. (quoting Windham v. State, 520 So.2d 123, 127 (Miss.1987)).
¶ 44. The jury at Brown's trial was instructed on murder, heat of passion manslaughter, and culpable negligence manslaughter. It chose to convict on the murder charge. We find, after viewing all of the evidence in the light most favorable to the verdict, that reversal is not warranted. The evidence in this case is legally sufficient, and the great weight of the credible evidence supports the verdict. The trial judge did not err in refusing to grant Brown's motion for directed verdict and JNOV, nor did he abuse his discretion in denying Brown's motion for a new trial.
¶ 45. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AND OF ATTEMPTED ARSON AND SENTENCE OF TWO YEARS TO RUN CONCURRENTLY WITH THE LIFE SENTENCE ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.