# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01258-COA

**APRIL EPPSTEIN POWELL**                                             **APPELLANT**

**v.**

**SHANNON POWELL**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2022 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER BRICE WIGGINS |
| ATTORNEY FOR APPELLEE: | COREY DANIEL GIBSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 01/14/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     The conditions of a couple's divorce required each to pay half of the medical bills of their three children if certain conditions were met. The father of the children sought an order of contempt against the mother, arguing she had not tendered her half of several thousand dollars in medical bills, which he had timely and properly presented for payment. The mother sought a series of continuances, but as of the time of trial, she did not have admissible proof that she had paid her share. The chancery court found her in contempt.

¶2.     She appeals, asserting a general claim that the weight of the evidence was not met and that the chancery court prevented her from mustering evidence in support of her defense. Finding no error, we affirm.

## BACKGROUND

¶3.     In 1997, April Eppstein married Shannon Powell.  The couple had three children.  In 2009, April filed for divorce from Shannon.  In 2014, the chancery court granted Shannon a divorce, finding that April had committed adultery during the marriage. The final judgment specifically referenced that a fourth child had been born during the pendency of the marriage, and Shannon was not the father of that child.

¶4.     The court's final judgment awarded "joint legal custody" of the three children to both parents, but Shannon was "awarded primary care and control of the minor children," with April having certain weekend and summer visitation. The terms of the final judgment ordered April to "pay 22% of her net income" to Shannon for child support, which was $660.  Both parents were required to maintain health insurance for their three children, and both were responsible "for half of all medical, dental, and oculist [eye] expenses not covered by insurance."

¶5.     The final judgment also stipulated further duties each parent was to perform, specifically regarding the medical care of the children.  The terms stated, "Each [parent] agrees that should the children require emergency or non-routine medical services while in their custody that they will immediately notify the other party."  And the terms continued, "Each party also agrees to provide the other party with a copy of any and all billing statements as a result of medical services within ten (10) days after receipt of the same."  The chancery court also ordered that "reimbursement shall be made to the paying party for the other party's one-half (½) share of any expenses not covered by insurance within ten (10) days after receipt" of an insurance coverage statement.

¶6. In addition, the final judgment required each party to "pay for one half of all public school related educational expenses" for the children until the end of high school.

*The contempt action begins.*

¶7. In 2019, about five years after the divorce was final, Shannon filed a petition for contempt against April. He alleged she had not maintained health insurance for the children, had not paid her half of the medical expenses, and had not paid her half of certain educational expenses. He further claimed he was entitled to attorney's fees and costs as a result of having to pursue a contempt action.

¶8. A Rule 81 summons was issued for April. MRCP 81. On September 11, 2019, the chancery court entered an agreed order of continuance to try the matter on November 18, 2019. April then sought another continuance through counsel, partly on the grounds that she needed more information about Shannon's current financial status, and she had filed a motion for a protective order that the chancery court had not yet reviewed. The case was subsequently continued to December 16, 2019, but the case was not tried that day.

¶9. Instead, it appears the parties again agreed to defer the trial date to 2020, though it is unclear when. In April 2020, counsel for April filed another motion to continue the contempt action. Her motion set out that trial was to be held on May 11, 2020, and requested to continue the case "until at least August 2020," due in part to the COVID-19 pandemic and her counsel's duties as an elected official in the Legislature. The next filing on the docket is an April 24, 2020 agreed order of continuance to try the matter on September 21, 2020.

¶10. During the period of time leading up to the re-scheduled trial date, the parties engaged

in a dispute over whether discovery should be conducted or quashed. Before the trial could occur, counsel for April filed another motion to continue, arguing the discovery disputes pre-empted the September 21 trial date. Shortly thereafter, April's counsel filed an amended motion to continue, which stated that "Hurricane Sally struck parts of Jackson and George County, Mississippi, with damage in Mobile, Alabama," and that April "manages a nursing home in Mobile . . . and herself lives in George County." Her amended motion argued that conducting the contempt trial as scheduled would "put her and her patients' lives at risk at this time and puts herself and family at risk."

¶11. A letter from April's counsel dated September 18, 2020, was then filed on the docket and apparently emailed to the chancery court, with counsel for Shannon copied on the email. In the letter, counsel for April reiterated his belief that Hurricane Sally had materially disrupted April's life and stated that "requiring my client to appear under said conditions is beyond comprehension and places her and her patients in danger."[1]

¶12. The following month, in October 2020, Shannon filed a revised petition for contempt, styled as his "Second Petition for Citation of Contempt." His revised petition added more claims, now arguing that April refused to produce a complete tax return for one year and refused to tender any kind of form reflecting her taxes for other years. Shannon further

---

[1] Counsel for April then said that he had not yet heard from opposing counsel. The letter also stated, "Unfortunately," "the appearance of favorable treatment towards them in this case appears evident." The next item on the docket is another letter from counsel for April, which was also sent by email the same day. The second letter confirmed the trial was continued again. In regard to his accusation of bias, counsel for April wrote, "I apologize for such comments and understand that the actions in this case are based only on what is before the court."

alleged April was refusing to pay $80 for one of the children's orthodontist bills and that the doctor had "refuse[d] to see her until said bill is brought current."

¶13.     The docket then reflects a hefty amount of discovery disputes, signified by various motions to either compel or deny discovery and various orders of the chancellor relating to discovery.

¶14.     Finally, in January 2022, the chancery court entered an order of contempt and modification. The chancery court addressed several details within this order. First, the chancellor reduced April's child support obligations because one child was about to be emancipated. Second, the chancellor determined that after some credits, April was "in arrears in the amount of $9,725" on child support. The chancellor ordered this amount to be paid off at $400 per month in addition to April's monthly payment obligation.

¶15.     Third, the chancery court considered a submission by Shannon containing "a spreadsheet with attached receipts through the current date with expenses he has paid for and on behalf of the minor children." After review, the chancellor chose to provide "a period of 30 days to allow [April] to submit cancelled checks to prove payment of the amounts" and pointed out she would "also be given credit for all payments she made towards any of the expenses claimed" by her ex-husband. The chancellor further decided to "hold the issue of contempt on unpaid expenses in [a]beyance pending production of proof of payment" by April.

¶16.     Absent agreement by the parties, the contempt issue was to be tried a few months later. However, the very next item on the docket is a motion for continuance filed by counsel

5

for April, which alleged that April "has an unexpected surgery scheduled for August 25, 2022." In turn, the parties agreed to have a trial on November 10, and an order was entered accordingly.

*The Chancellor hears evidentiary proof.*

¶17. Throughout the hearings on the child support issue conducted before trial, the evidence offered established that April did not always pay a bill when it was due; instead, she paid it when she had the money. For instance, April was asked if she knew she was behind on payments for an orthodontist bill that required her to pay $80 a month. She conceded, "I was aware that I owed $240," which spanned a four-month duration. April testified she paid "when my funds are available" but that she had simply gotten behind. When she got an email from the orthodontist about the late payments, April admitted, "[S]ometimes I have not responded in a timely manner to them for that." At the same hearing, April stated she made roughly $85,000 a year.

¶18. While April admitted she could get behind on her bills, she maintained that she "caught it up. I didn't realize it was that much but that's because of my schedule, et cetera, but I took care of the bill[.]" "[H]onestly, some days because of my line of work as a nursing home administrator, I don't check my personal e-mails every day, so I can see where I can overlook those things at times."

¶19. She also addressed a point of contention in discovery—whether she had provided tax returns as was required. April took the blame for not producing the full returns. She testified, "[W]hat I thought was wanted was my income," and "I didn't know that I was to

include the whole thing [tax return] in its entirety at that time because it included my [current] husband's income and I knew that he wasn't part of mine and Mr. Powell's divorce. So I extracted my income out of that[.]" Nevertheless, she proceeded to admit that her lawyer had told her the whole tax return was needed and that she had her mother talk to his office but misunderstood what was needed. She brought the tax returns to the hearing. During cross-examination, April conceded that "[b]ased on what I've heard here today," the full tax returns for the relevant years were not provided in the manner required. The chancery court required April to prepare a current Rule 8.05 financial statement. UCCR 8.05.

¶20. During the same hearing, counsel for April sought to enter into evidence what was described as a "composite exhibit." Counsel for Shannon objected, arguing the proposed exhibit was just a "timeline prepared by her with some handwritten notes," not a composite; but in any event, the underlying documents had not been provided. The chancellor told counsel for April that the proposed exhibit could be used as a guide for her testimony but did not need to be introduced into evidence. As a result, the exhibit was marked for identification purposes.

¶21. As for the eventual contempt trial, some preliminary proof was heard first. The contempt matter was heard over several days. A core dispute during these hearings was the chancery court's review of the evidence in the case. The chancery court had ruled that Shannon had met his burden of proof through the submission of the spreadsheet showing the medical bills he had incurred for the children. April contested the amounts claimed but had

7

not refuted the amounts with evidence of her own. In response, counsel for April argued that her testimony on what she had paid should be acceptable since she was under oath and "subject to perjury."

¶22. The chancery court declined, however, stating that it would be unworkable to sift through uncorroborated proof. The chancery court explained that there were "two choices." "You match it," the chancery court told counsel for April, "take your summary and get the receipt that goes along with each item and match it with each item" that April claimed she paid. Or the other option, as the chancellor explained it to April, was "to go ahead and rule against you completely, but that may be an injustice because you may have already paid your part." In the end, the chancellor ultimately said, "I'm going to give you an opportunity to produce the evidence" that April had indeed paid the claimed amounts. Counsel for April thanked the chancery court, and the contempt issue was then continued over the objection of counsel for Shannon.

*April is held in contempt.*

¶23. The chancery court entered the final judgment summarizing the contempt trial ruling in favor of Shannon and holding April in contempt. The order initially addressed the combative and extensive history of the case. "[T]here have been five motions for continuance since the case began," the chancery court wrote, and "[a]ll five of the motions for continuance were filed by counsel for April[.]"

¶24. The chancery court "would further note that during the pendency of this litigation [it] has already found [April] in contempt for failure to timely pay medical expenses, being in

8

arrears in her child support obligation, and failing to comply with an order by this Court compelling her responses to discovery within 30 days of the entry of the order granting Mr. Powell's Motion to Compel."

¶25. The chancellor then made a factual finding that Shannon "has submitted a spreadsheet with attached receipts through the current date with expenses he has paid for and on behalf of the minor children." The judgment noted the chancellor had allowed April "a period of 30 days . . . to submit cancelled checks to prove payment of the amount" on the spreadsheet and "held the issue of contempt on unpaid expenses . . . pending production of proof of payment[.]"

¶26. April "only produced a few checks," and "[t]he only two checks that clearly identified what the payment was for" were two payments in the amount of $875.00 and $1,256.16, which the court did credit to her. "The only other checks she produced did not match the amounts alleged on the spreadsheet produced" by Shannon. According to the chancery court, April "further acknowledged on cross examination that the checks that she produced were for expenses not listed on the spreadsheet"—i.e., not at issue in the contempt hearings—"and that she could not point to a specific notation or document to prove that the expenses [Shannon] alleged to be unpaid had in fact been paid."

¶27. Originally, "[t]he total amount left due and owing as alleged by [Shannon] was $10,064.88," but this amount was lowered in accordance with proof offered to the chancery court. Based upon the spreadsheet presented, the chancery court found that "[t]he burden then shifted to [April] to introduce her proof of all expenses she had in fact paid." April was

9

given a credit for an $875 payment related to dental expenses and a $1,256.16 payment made previously in the dispute. As a result, Shannon's claim was revised to $7,933.72.

¶28. Accordingly, the chancery court found April in contempt for the remaining $7,933.72 owed to her ex-husband. The chancery court also assessed April with the cost of attorney's fees since Shannon had to seek the assistance of the chancery court to obtain what was established by the final judgment of divorce. The attorney's fees totaled $7,200.

¶29. No post-trial motions were filed. Aggrieved, April appeals from the chancery court's final judgment.

## DISCUSSION

¶30. April has raised eleven issues on appeal.[2] We will restate and group the issues as

---

[2] We reproduce them here in full for the sake of reference:

1. The chancery court erred in not following the terms of the previously agreed final divorce decree which the appellate courts of this state have repeatedly stated is a contract between the parties that is to be enforced as such.
2. The Court erred in not giving credit for payments of expenses and costs to Appellant made directly to and/or for the benefit of the parties' children.
3. The court erred by not applying the doctrine of "unclean hands" to Appellee's conduct regarding the divorce decree.
4. Appellee's conduct contributed to or directly caused Appellant's error in payments of child support and expenses, arguendo, which the court failed to acknowledge and therefore erred in ordering Appellant to pay said costs and expenses as well as attorney fees.
5. The Court erred in holding Appellant in contempt as Appellant's conduct was not willful and therefore the award of attorney fees to Plaintiff was erroneous and should be set aside.
6. The Court erred when it refused to admit into evidence Appellant's summary of costs, expenses and payments made by her in violation of M.R.E. 1006 thereby prejudicing Appellant and her case.
7. The Court violated Uniform Chancery Court Rule 1.10(A) in not

10

needed for clarity below, generally addressing (1) the chancery court's interpretation of the final judgment of divorce (addressing April's issue one); (2) whether April should have been held in contempt, and if so, for what amount (addressing April's issues two through five and ten); and (3) whether evidentiary rulings by the chancery court prejudiced April (addressing April's issues six through nine).[3] Finding no reversible error, we affirm.

## I.   The final judgment of divorce was not violated.

¶31.   April's brief contains multiple arguments generally centered on a claim that when the chancery court held her in contempt, it violated the terms of the original judgment divorcing her and Shannon.  The pair had agreed on the terms of their divorce, and those terms had been reduced to writing and incorporated into the divorce judgment.  The question before this

---

allowing Appellant to conduct discovery when it did not find good cause existed on Appellant's motion for extension of the ninety-day limit after service of an answer.

8.   The Court's practice of excluding exhibits at trial if not first listed in the Court's form pre-trial order amounted to a "local rule" under Uniform Chancery Court 1.14 requiring approval by the Supreme Court and its application without said approval prejudiced Appellant.

9.   The Court violated Uniform Chancery Court Rule 3.03 and prejudiced Appellant in trying her theory of the case by refusing Appellant full cross-examination and exploration of "matters pertinent to the issues inadvertently omitted."

10.   The Court's ruling is against the overwhelming weight of the evidence and should be overturned.

11.   The Court erred in its Final Judgment stating that the final divorce decree of March 17, 2014, awarded Appellee full physical custody of the minor children and should be made proper.

[3] Counsel for April concedes that her eleventh argument regarding a scrivener's error in the final judgment does not warrant reversal, and counsel for Shannon argues that because it is not supported by a citation of authority, it is waived.  We agree and do not address it. *See* MRAP 28(a)(7).

Court is whether the medical and educational expenses were properly paid or were restricted by the document; more precisely, whether Shannon properly informed April they were due.

¶32. "We review issues of law, including the interpretation of a property settlement agreement, de novo." *Siders v. Zickler*, 312 So. 3d 1224, 1228 (¶11) (Miss. Ct. App. 2021). "A property settlement agreement that is incorporated into a divorce decree must be interpreted by courts as any other contract." *Id*. at 1128-29 (¶13) (internal quotation marks omitted). "When the agreement's language is clear or unambiguous, we will enforce it as written," and if unclear, we will "harmonize the provisions in accord with the parties' apparent intent." *Id*. at (¶13) (internal quotation marks omitted).

¶33. When April and Shannon were divorced in 2014, the final judgment ordered that they "shall both provide policies of health insurance" for each child until the child became 21 years old. Furthermore, both Shannon and April were to "be responsible for half of all medical, dental, and oculist expenses not covered by insurance." There was a "10 day rule" in the divorce, through which both April and Shannon "agree[d] to provide the other party with a copy of any and all billing statements as a result of medical services within ten (10) days after receipt of the same[.]"

¶34. After a parent received notice of the medical costs, "[r]eimbursement shall be made to the paying party for the other party's one half (½) share of any expenses not covered by insurance within ten (10) days after receipt," otherwise reimbursement would not be required. The final judgment also contained the following term: "No reimbursement shall be due and owing" unless the bills "are mailed or hand delivered to the other party[.]"

¶35. Educational expenses were distinguished in the divorce judgment and were subject to restrictions. Specifically, they were restricted to ten semesters and "limited to the cost of an 'in-state' education and shall be subject to the child maintaining a 2.0 GPA."

¶36. One of April's key defenses to Shannon's claim that she was behind several thousand dollars in medical expenses was that he had not timely provided her with notice that the bills were due. In response, Shannon testified that "over the course of the years and the situations it's become commonplace that we text back and forth" and also email each other bills, which counsel for April believed fell outside the boundaries of the final judgment.

¶37. April does not specifically describe how it was reversible error for the chancery court to rule that emails and texts could constitute notice. Precedent requires us to look at the plain language of the terms of the contract, and "[i]f the contract is unambiguous, 'the intention of the contracting parties should be gleaned solely from the wording of the contract[.]'" *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing L.L.C.*, 290 So. 3d 1257, 1259 (¶5) (Miss. 2020) (quoting *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶17) (Miss. 2012)). "This Court must 'accept the plain meaning of a contract as the intent of the parties where no ambiguity exists.'" *Id.* at (¶5) (quoting *Epperson*, 93 So. 3d at 16 (¶17)).

¶38. We find the plain language of the final judgment of divorce required the parents to timely communicate that there was a medical bill. We have addressed a similar scenario recently where a father complained a mother "did not provide him with the majority of [the child's] medical bills and that he was unaware of what he actually owed after the insurance portion was paid." *Talley v. Talley*, 366 So. 3d 901, 907 (¶12) (Miss. Ct. App. 2023). Yet

13

the proof showed that she had "provided some bills to [him] via text message and email," and he made communication difficult. *Id*. at (¶11). We found that the proof she submitted at trial was sufficient to sustain the contempt finding. *Id*. at (¶12).

¶39. In this case, April does not point to any *specific* instance where she was not informed of a medical bill or where a text message or email failed to communicate to her a pending medical bill. To some extent, April argues that Shannon did not comply with the 10-day rule in the final judgment or that the chancery court wrongly applied it. But this is just a generalized complaint and not at all associated with a specific dollar value or line item, nor with counter-proof that Shannon was untimely in notifying her of a medical bill.

¶40. Similar to the husband in *Talley*, April attempts to find a "gotcha" moment to defeat Shannon's itemized spreadsheet of medical bills and escape her financial obligations. Her brief contains a lengthy quotation from the transcript of a dialogue between her lawyer and the chancellor. Yet her brief does not point out a single dollar value of error or how the chancery court misinterpreted the final judgment of divorce as to a particular medical bill that led to reaching the wrong conclusion. Our Rules of Appellate Procedure require an argument to contain the appellant's contentions with respect to the issues presented and the reasons for those contentions, with citations to the authorities, statutes, and *parts of the record relied on*." MRAP 28(a)(7) (emphasis added). We find no reversible error on this issue.

## II. The chancellor's finding of contempt was not manifest error.

¶41. Next, we address the assignments of error April numbered two through five and ten. The core complaint April makes is that she should not have been found in contempt of court

for failure to pay her half of the medical bills.

¶42.    "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Fortner v. Bratcher*, 394 So. 3d 452, 458 (¶24) (Miss. Ct. App. 2024). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id*. "With respect to a finding of civil contempt, 'the factual findings of the chancellor are affirmed unless manifest error is present and apparent.'" *Id*.

¶43.    "The primary purpose of civil contempt is to enforce the rights of private party litigants or to enforce compliance with a court order." *Id*. "The Mississippi Supreme Court has consistently held that the inquiry in a contempt proceeding is limited to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court." *Id*. "The failure of a party to comply with a divorce decree is prima facie evidence of contempt." *Id*.

¶44.    In the chancery court here, Shannon presented testimony and evidence of receipts for medical bills he paid on behalf of his and April's children. The final judgment of divorce required April to pay half these bills as long as they were timely presented to her. The court determined that the total of her half of medical bills owed was $10,064.88.

¶45.    The chancery court found that April was entitled to a credit of $875 for a dental-related payment and a credit of $1,256.16 for payments made during the litigation, noting that both parties had "acknowledged the payment and agreed that it should be taken off of the

15

unpaid expenses." The chancery court made a finding of fact that "there was a remaining balance of $7,933.72 that [Shannon] claimed was still due and owing."

¶46. The chancery court order noted April had also "testified that she and [Shannon] had both paid other [medical] expenses of the children outside of what was alleged to be unpaid[.]" But the chancellor found that April had "only produced a few [canceled] checks at the final trial," even after being provided more time to muster up receipts and other proof. "The only two checks that clearly identified what the payment was for the $875.00 check and the $1,256.16 check, both of which she was given credit for having previously paid." The chancellor made a finding of fact that April "could not point to a specific notation or document to prove that the expenses that [Shannon] alleged to be unpaid had in fact been paid." Accordingly, the chancellor found April in contempt for the remaining $7,933.72.

¶47. Similar to the defense she presented at the trial, on appeal April does not identify any *specific* miscalculation of a line item, any particular cost that should have been deleted, or any evidence in the record of a wrongly attributed payment. Instead, her brief presents a general grievance that "faith is lacking" in the "Chancery [C]ourt system in Smith County[.]" Along the same lines, her other related issues make general claims that Shannon should have been found to have unclean hands and that the chancellor's ruling was against the weight of the evidence.

¶48. Our precedent requires much more to overturn the findings of a chancery court in a contempt matter. "Because [of] the high level of deference this Court must show toward any findings of fact made by a chancellor, we will only review for manifest error or abuse of

16

discretion." *Reid v. Reid*, 998 So. 2d 1032, 1037 (¶10) (Miss. Ct. App. 2008). "The word 'manifest,' as defined in this context, means 'unmistakable, clear, plain, or indisputable.'" *Id*. (quoting *Mosley v. Atterberry*, 819 So. 2d 1268, 1272 (¶16) (Miss. 2002)). "The standard of manifest error is high[.]" *Scott v. State*, 8 So. 3d 855, 861 (¶22) (Miss. 2008).

¶49.    At its core, this dispute was over whether April had paid her half of the children's medical bills.  The chancery court made a finding of fact that Shannon had *undisputedly* incurred medical costs on behalf of the children, regardless of whether April protested the time he informed her of the costs.  The chancery court also made a finding of fact that Shannon provided proof of the medical costs, and April failed to rebut this proof.

¶50.    Our precedent on this point is clear.  "In a contempt action, when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so, a prima facie case of contempt has been made." *Durr v. Durr*, 912 So. 2d 1033, 1039 (¶18) (Miss. Ct. App. 2005).  "At this point, the burden shifts to the paying party to show an inability to pay or other defense." *Id*.

¶51.    The chancery court found April had not shown an inability to pay or any other defense.  After reviewing these matters and in accordance with the "substantial discretion" vested in our chancery courts, we find no reversible error.

**III.    The evidentiary rulings were within the chancellor's discretion.**

¶52.    Lastly, we address the assignments of error April numbered as six through nine.  The crux of April's contention here is that the chancery court did not allow her to introduce documents, which she now calls a "summary," or other evidence in her possession and would

not allow her more time to conduct discovery.

¶53.    Our Rules of Evidence allow for a summary to be introduced if there are "voluminous" originals:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

MRE 1006.  There are two key contingent factors here.  One cannot use the rule to introduce what a party merely terms "a summary"—because, first, one "must make the originals or duplicates available," and second, one may also have "to produce them in court."  Therefore, as a predicate, there has to be data upon which the alleged summary is based.

¶54.    In one case, we found there was no error when a trial court "refus[ed] to admit a summary of medical expenses" allegedly related to injuries. *Johnson v. Cumberland*, 91 So. 3d 646, 650 (¶12) (Miss. Ct. App. 2012).  "[T]he chancery court directed [the proponent] to produce the medical records, but he did not." *Id*.  Accordingly, we affirmed. *Id*.

¶55.    The same situation exists here in regard to April's proposed Exhibit 4.  The chancery court had sua sponte recessed a hearing prior to trial for the purpose of giving April an opportunity to gather information that supported her handwritten calculations—which she calls her "summary" on appeal.  But as Shannon points out, the proposed exhibit was not a summary.  On the stand, April described it as a mix of a letter to Shannon's lawyer, another letter from a lawyer, various spreadsheets from Shannon, and some other material, including what the chancery court viewed as "her notations of the dates and what she thinks" she paid

18

on medical bills. As her lawyer called it, it was a "composite exhibit"—*not* a "summary" as contemplated by our evidence rules.

¶56. The chancery court found that the proposed exhibit did not contain any canceled checks and declined to allow the exhibit into evidence. In accord with the scope of the chancery court's discretion and holding in *Johnson*, we find no error.

¶57. Relatedly, April argues she did have canceled checks, but the chancery court would not allow her to introduce them during redirect. She frames this issue as the chancery court's having crafted a local rule to restrain her efforts. But counsel for Shannon had objected that April was seeking to introduce the evidence only after her cross-examination and during redirect of her testimony. The chancery court foreclosed her attempted introduction, stating they "should have been exhibited on your case in chief or on direct testimony from her or some other witness and it wasn't done[.]" The chancery court also pointed out the alleged checks were not on the exhibit list or marked on the pretrial order.

¶58. "[W]e will not disturb a [chancery] court's ruling on matters pertaining to redirect examination unless there has been a clear abuse of discretion." *Brown v. State*, 981 So. 2d 1007, 1017 (¶31) (Miss. Ct. App. 2007). The core reoccurring theme of April's appeal is that she was not able to defend against Shannon's claims that she had failed to pay her half of the medical bills. However, it cannot be ignored that the record is interwoven with facts showing that April did not timely respond to discovery, did not fully respond to discovery when she did respond, and repeatedly sought continuances over discovery matters or her unavailability.

19

¶59.    Also, April did not produce the checks, even after having previously been given the time to produce them. The chancery court had the authority to foreclose the alleged checks from being admitted into evidence at that late stage in the trial. As Shannon argues, April "did not take advantage of that opportunity to her peril." We find no error. *See Bowie v. Montfort Jones Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003) ("Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril").

¶60.    April further attacks other rulings by the chancery court, contending it tied her hands in the introduction of evidence and in not allowing her more time to respond to discovery. It is well established that "[t]he control of discovery is a matter committed to the sound discretion of the trial judge." *Rutland v. Regions Bank as Tr. of William Hunter Rutland Fam. Tr.*, 393 So. 3d 1039, 1047 (¶41) (Miss. Ct. App. 2024). As set out above, the court granted multiple continuances at April's requests; indeed, the chancery court's final judgment found there had been five continuances, and "[a]ll five" were by April. The original petition for contempt was filed in 2019, with multiple hearings and hundreds of filings to follow. We find no error in the chancery court's control of its docket, and given the protracted nature of the litigation, we find it was within the chancery court's discretion to deny any further requests for continuances or time. *See Dailey v. McBeath*, 151 So. 3d 1038, 1042 (¶11) (Miss. Ct. App. 2014) (finding no abuse of discretion in refusing to continue a case when the litigant "and his counsel should have been prepared for the possibility that the motions for

20

a continuance would be denied," the case was relatively simple, "the hearing had been scheduled for several months," a previous continuance had been granted, and there was no proof the party "was unable to attend the hearing").

¶61. Furthermore, the chancery court repeatedly tried to give April the benefit of the doubt, even over the zealous objection of counsel for Shannon. After it was clear April did not have canceled checks to support her defense that she had paid some of the medical bills Shannon had presented, the chancery court sua sponte continued the hearing so she could gather her papers. As the chancery court put it to April directly, there were two options—"to go ahead and rule against you completely, but that may be an injustice because you may have already paid your part," or to "give [you] an opportunity to produce the evidence" that she had paid the claimed amounts. The chancellor chose the second option, but April never produced the evidence.

¶62. The record before us belies April's contentions that she was prejudiced by the lack of further discovery and instead shows she received *ample* opportunities. For instance, at one point in a hearing, counsel for April began to argue that it was his understanding that Shannon opposed discovery based on a local rule. The chancery court interjected: "We don't have a local rule. We have a Uniform Chancery Court Rule 1.10. The first sentence of 1.10 says, 'All discovery must be completed within 90 days from the service of an answer.'" In the chancery court's view, since April answered the petition for contempt in December, her 90 days for discovery "ran in March. And you didn't file your discovery until October."

¶63. In response, counsel for April argued that Rule 1.10 allowed for an extension and that

21

the COVID-19 pandemic and legislative response warranted one in this case. The chancery court pointed out that "[i]f you had made some type motion to extend the deadline for any of those reasons, or even if you had made a motion within a reasonable period of time after the deadlines had run, a month, or two months after, I believe the Court could have listened" and possibly extended discovery. But at that late date, the chancery court found there was "no good cause" to justify an extension.

¶64.    Given the number of continuances sought and received by April, the relatively straightforward nature of the case (medical bills incurred by children), and the wide discretion granted the chancery court to control its docket, we find no error.

## CONCLUSION

¶65.    For the foregoing reasons, the chancery court was not in error for finding April in contempt for failure to pay her half of the medical bills her children incurred. Therefore, we affirm the chancery court's final judgment finding that April is obligated to pay $7,933.72 for her share of the children's medical bills.[4]

¶66.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, EMFINGER AND WEDDLE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE AND ST. PÉ, JJ., NOT PARTICIPATING.**

---

[4] On appeal, April did not contest the related finding that she should also carry the cost of Shannon's attorney's fees and expenses, which the chancery court found was a "reasonable" amount of pursuing contempt in the amount of $7,200. *See Riley v. Riley*, 196 So. 3d 1159, 1164-66 (¶¶23-32) (Miss. Ct. App. 2016) (holding that an award of appellate attorney's fees is appropriate when the chancery court awarded fees based on a finding of contempt, and the recipient must defend the finding on appeal).